Jimmy James BOUZIDEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 5642.

United States Court of Appeals
Tenth Circuit.

Jan. 29, 1958.

Writ of Certiorari Denied April 7, 1958.
See 78 S.Ct. 716.

Hayden C. Covington, Brooklyn, N. Y., for appellant.

Philip R. Douglas, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., was with him on the brief) for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Bouziden stands convicted of refusing to submit to induction into the armed forces. 50 U.S.C.A.Appendix § 462. He seeks relief from the judgment and sentence urging that the trial court twice refused, prejudicially, to properly apply the rule and philosophy announced in Jencks v. United States [1] and further erred in failing to recognize the denial of procedural due process in the administrative channels leading to his classification as 1-A. The contentions are interlaced in law and fact.

Bouziden is a member of Jehovah's Witnesses. Asserting subjective sincerity in his belief in the teachings of that religion, appellant filed a draft classification questionnaire on March 4, 1952, claiming exemption from conformable military service. The local draft board refused him classification as a minister of religion (IV D) [2] and similarly rejected his claim to a 1-O classification, that of a conscientious objector. Bouziden appealed his 1-A status and his file was referred to the Department of Justice for investigation and recommendation in accordance with 50 U.S.C.A.Appendix, § 456(j). That Department recommended to the appeal board that Bouziden be denied classification as a conscientious objector, noting in its report that the applicant believed in theocratic warfare and was willing to fight in self defense.[3] The appeal board classified him 1-A and he refused to submit to induction on May 25, 1953. Prosecution was begun but dismissed and appellant's file was referred to and reopened at the local board level.

On May 4, 1955, the local board again classified appellant 1-A, and upon his appeal, his file was again forwarded to the Department of Justice. The Federal Bureau of Investigation made inquiry and observation of Bouziden's background and associates and submitted a report to the departmental hearing officer and a résumé to appellant. Appellant requested that the hearing officer send a copy of the full F. B. I. report to the appeal board and another copy to him. This was not done.

Appellant considered the F. B. I. résumé to be unfair and wrote the hearing officer to that effect. Particular complaint was made of statements questioning the moral conduct of certain of appellant's acquaintances and relatives, activities of which appellant asserted he had no knowledge. The résumé con-

---

1. 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103.

2. This action is not now questioned.

3. Such beliefs are not grounds for a denial of a 1-O classification. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436; Annett v. United States, 10 Cir., 205 F.2d 689.

tained statements of witnesses favorable to appellant as well as those who thought him not sincere in his religious beliefs. Sincerity of belief is the essence of the inquiry made by the Department of Justice. Bradshaw v. United States, 10 Cir., 242 F.2d 180.

On September 22, 1955, a hearing was held during which both appellant's wife and the hearing officer took notes of the occurrence. The hearing officer reported unfavorably upon appellant's sincerity claim, the Department of Justice recommended against his request to be classified as a conscientious objector, the appeal board classified him as 1-A, and the local board ordered him to report for induction on July 24, 1956. He refused to submit to induction and this prosecution followed.

■■ Trial was had to the court sitting without a jury. Appellant again sought production of the entire F. B. I. report and his demand was again refused. He asserts this to be error compounded, claiming the right to the report both in the instant case and during the course of the precedent administrative proceedings.

Against an assertion that the Fifth Amendment grants the applicant the right to inspect the investigators' reports, it was held in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, that the Justice Department satisfies its statutory and constitutional duties when it supplies a registrant with a résumé of any adverse evidence and permits him to produce all relevant evidence in his own behalf before an impartial hearing officer. The hearing outlined by the statute is not an all-out trial wherein the registrant may collaterally attack the testimony obtained in the prehearing investigation.

Since the Nugent case was not expressly overruled by Jencks v. United States, supra, appellant seeks first to distinguish his case from the Nugent case and bring it within the rule of the Jencks case and second to show that the Nugent case was indirectly overruled by the Jencks decision.

Appellant sought the production of the complete investigative reports in the trial of his criminal prosecution for failing to submit to induction after having been so ordered by his local board. Therefore, he avers that the question is not whether the hearing was conducted by the appeal board in accordance with the standards of due process, as in Nugent, but rather goes to his right to those records in defense of a criminal action in an attempt to show that the order of the board was baseless in fact and hence unlawful. This theory has twice been tested in the federal system since the Jencks decision, the two courts arriving at opposite conclusions in United States v. Jacobson, D.C.W.D.Wash., 154 F.Supp. 103 and Blalock v. United States, 4 Cir., 247 F.2d 615, 620.

In the Jacobson case, the District Court emphasized the fact that although only the résumé was submitted to the appeal board and that board made its final determination without considering the full F. B. I. reports, the two recommendations from the Justice Department were probably highly influential and had been made by men who had studied the full reports. It was that court's opinion that the Jencks case required that the F. B. I. reports in their original form be produced for the defendant's inspection or that the prosecution be dismissed.

The court further recognized that the inevitable result under this view would be to entitle the registrant to the files in a criminal prosecution which were closed to him before the administrative bodies, thus nullifying the clear distinction drawn between the original reports and the résumé in Nugent, but dismissed this argument as not being in accord with the philosophy of Jencks.

On the other hand, the Fourth Circuit adhered to the view of the Nugent case in Blalock stating:

"The history of the treatment of F. B. I. reports, both in Nugent and in other cases, however, indicates the sharp distinction between applications by defendants in ordinary criminal cases to examine statements

made to the F. B. I. by witnesses called to the stand by the Government, and demands for the production of such reports in conscientious objector cases. It is arguable that the résumé furnished the accused in a Selective Service case is like a witness; that the résumé should be subject to testing for fairness and completeness by a process similar to that applied to a witness whose testimony may be impeached by showing prior conflicting statements. Moreover, it is undeniably true that one cannot easily judge the fairness and completeness of a résumé without looking at the documents it purports to summarize \* \* \* However plausible these contentions, we cannot accept them, for the point was considered and rejected in Nugent." And further that:

"Whatever may be the boundaries and limitations of the Jencks doctrine, we think it clear that it is subject to the qualification of the Nugent case for the type of problem here involved, that is, testing the accuracy of the résumé furnished in conscientious objector cases, in contrast to impeachment of witnesses in criminal cases. The Nugent case explicitly holds that if the defendant was furnished a résumé and accorded an opportunity to be heard, he cannot complain that he was not shown the investigative records, nor can he insist on their production at the criminal trial."

Appellant was informed of all adverse information and conclusions destined for consideration by the board of appeal; he was granted a hearing and permitted to enter rebutting evidence for the board's consideration. He does not contend that under the Nugent doctrine he has a right to collaterally attack or impeach the informants; he desires to examine the original reports in order to determine whether or not the board received a fair and full report of all favorable information received by the F. B. I.

In thus claiming his right to the reports, appellant neglects the consideration that the burden is his in all stages of the classification proceedings to show that he is entitled to the grace of statutory exemption. Bradshaw v. United States, supra. The Department of Justice is under the duty of investigating, informing him of evidence against him, and holding a hearing to permit him to explain, rebut or overwhelm such evidence. The Department does not hold a position of advocacy either to maintain or defeat his classification claim; it merely acts as a preliminary hearing body with powers of independent investigation for the purpose of advising the appeal board. In this the F. B. I. reports perform an entirely different function than when they are made with the objective of prosecution. In the Jencks case, the government must make an election as to whether to permit access to the secret files which it intends to use in prosecution, base its case on other evidence, or, if it has no other evidence, dismiss the action. Such is not the present situation. Without the special dispensation allowed the conscientious objector, his classification would follow that of other young men in his situation. The procedures to test his sincerity are a part of the statute and his classification is subject to them.

The fact that the Justice Department's recommendation forms a part of the record and the complete file is not before the board of appeals does not make the board's action unlawful (since this is the determinative procedure set by statute) if there is a basis in fact to be found in the whole record. The record does not change complexion because the applicant chose to disregard a lawful order of the board and thus subject himself to criminal prosecution. The exploration of the sincerity of the applicant's belief is made the duty of the local board, the appeal board and the Department of Justice and the court may not substitute its judgment of this subjective fact where the determination has some basis in objective fact. Estep v.

United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

We hold that appellant was neither entitled to the full F. B. I. reports during his classification proceedings, United States v. Nugent, supra, nor during his trial, United States v. Blalock, supra.

Among the witnesses called by the government in aid of prosecution was the Department of Justice hearing officer before whom Bouziden had appeared. The witness testified as to events which transpired at the hearing, his testimony conflicting in part with that of Mrs. Bouziden upon the same subject. On cross examination, the government's witness stated that at the time of the hearing he had made notes in longhand (as had Mrs. Bouziden) and that he had the notes with him on the witness stand. Appellant requested the court to require the witness to produce the notes for examination for possible impeachment. The request was denied. Relying again upon Jencks, supra, appellant cites this ruling as error requiring reversal.

At the outset it may be noted that the factual background of Jencks may be clearly distinguished from that herein considered. In Jencks the reports sought were made during the investigation of the crime charged and with the view of prosecution. Here, the notes were made by an impartial hearing officer performing a function of statutory nature. In Jencks, the reports were official in nature and communicated as such. Here, the notes were but a personal aid to one performing a quasi-judicial function and totally uncommunicated. In Jencks, the reports were in the official possession of the prosecution. Here, the notes were in the possession of a witness over whom the government may well have no control.

■ But more important is our opinion that the rationale of Jencks is neither intended to reach the instant case nor should it be so extended. Under the rule of the Jencks case the government must make its choice to prosecute or refrain, to produce or refuse, to punish or release in accordance with its judgment as to how the public good will be best served.

And under the facts of Jencks the government has control and knowledge of the factors upon which its decision as to the public good must rest. In the instant case the prosecution had neither knowledge of nor control of the hearing officer's notes. We do not interpret Jencks as applying to personal writings of government witnesses. The refusal of the trial court to direct the hearing officer to surrender his notes, in the absence of a showing of value for impeachment or that the witness was testifying or had refreshed his memory from the notes, was well within the trial court's wide discretion under the general rules of evidence.

■ Appellant's remaining assignments of error attack the F. B. I. résumé and the Department of Justice report as containing "unfair representations and illegal grounds for the denial of the conscientious objector claim" and also as making "serious omissions of facts favorable to the appellant" all of which led the action of the appeal board to be without basis in fact. The scope of our review in this regard is extremely limited.

"It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of designated agencies. Nor should they look for substantial evidence to support such determination." Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

To determine whether or not a person is sincere in a particular religious belief is a most difficult task which can never be the subject of complete satisfaction. And to judge a person's religious sincerity by the acts and conduct of relatives and other persons may be extremely unfair. Truly a man may be a pillar of religious devotion and have a brother who is a reprobate. But the exploration of subjective sincerity is imperspicuous by definition and we cannot say that prolonged and intimate association with the immoral does not probe the subject. It may. As to whether it does in a particular case of this nature we leave to others

as the rule requires. Similarly we note that the hypocrite may attend formal religious services without fail and the pure in heart may not; the liar may be direct in his answers and the personality of a truthful man may give a false impression of evasiveness. But the converse may be true and perhaps more often is. During the administrative process this appellant was designated as being evasive in answer, associating with persons of poor moral character and serving his church with irregularity. We conclude that the action of the draft board is not, as a matter of law, without any basis of fact.

The recommendation of the Department of Justice contained the statement that applicant was not opposed to theocratic wars or self defense. The type of reasoning which leads to the conclusion that an applicant cannot be conscientiously opposed to warfare if he holds such beliefs has been denominated an error of law which vitiates the entire proceedings. Sicurella v. United States, supra. Such a belief cannot be considered as nullifying a conscientious objection to warfare nor as forming the basis for rejection of the application, Annett v. United States, supra. However, the statement of the applicant's beliefs contained in the body of the report is clearly relevant for consideration and the hearing officer's recommendation does not rely on the erroneous standard of Bouziden's willingness to fight in theocratic wars but rests on the total view of the applicant's sincerity.

Finally, appellant asserts that the first report of the F. B. I. and the recommendation of the Department did utilize this improper standard and was never formally retracted, so tainting the present proceedings as to void them. Since the original prosecution was dismissed and appellant's draft status considered de novo, we are in simple accord with the trial judge's statement that there is no reason to believe that appellant's ultimate classification was influenced improperly.

The judgment is affirmed.