**UNITED STATES of America,
Plaintiff,**

v.

**Gayle Norman GLOVER, Defendant.**

**Cr. No. 16473.**

United States District Court
E. D. Arkansas, W. D.
Dec. 31, 1959.

Osro Cobb, U. S. Atty., Ralph Sloan, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

J. B. Tietz, Los Angeles, Cal., for defendant.

HENLEY, Chief Judge.

This is a criminal case that by agreement was tried to the Court without a jury. The charge against the defendant, Gayle Norman Glover, is that on or about July 16, 1958, he knowingly and unlawfully refused to submit to induction into the armed forces of the United States at the induction station at Little Rock, Arkansas, as he had been ordered to do by the local selective service board at Conway, Faulkner County, Arkansas, thereby violating 50 U.S.C.A.Appendix, § 462 (a). From the evidence the Court finds the following facts beyond a reasonable doubt:

The defendant was born on December 2, 1935, and registered with the local draft board at Conway on December 8, 1953. At that time he was unmarried and resided with his parents near the town of Vilonia. In his original questionnaire, which was filed with the board on February 10, 1954, he stated that he was in the 12th grade at Greenbrier High School and expected to graduate in June. He indicated that he was conscientiously opposed to participation in war in any form and requested that he be mailed a Special Form for Conscientious Objector (SSS Form 150). He stated that he felt that he should be classified as a conscientious objector and that he did not "believe in anything that pertains to war or killing."

On account of his status as a high school student, the local board on March 1, 1954, placed the defendant in Class 1–S, which classification was to remain in force until June of that year. On May 27 the defendant was mailed the Special Form for Conscientious Objector, which form he executed and returned to the board on June 2. On June 1 the board had placed the defendant in Class 1–A, and he was mailed a notice of that classification on the same day the board received his executed conscientious objector form.

In the document last mentioned the defendant stated that he believed that he owed duties to God which were superior to any arising from human relationships, and that the teaching of God forbade him to participate in war of any kind. He made particular reference to the Commandment, "Thou shalt not kill." Defendant stated that he had derived his religious beliefs from his parents, from reading the Bible, and from listening to the preaching of a minister by the name of Herbert W. Armstrong.[1] One of the questions on the form required the defendant to state the circumstances, if any, in which he felt that the use of force was justifiable, and another called upon him to state whether he had ever given public expression, either written or oral, of his religious beliefs. The defendant did not answer the first question just mentioned, and he replied to the second in the negative.

Called upon to describe the actions and behavior in his life which in his opinion most clearly demonstrated the consistency and depth of his religious convictions, defendant stated that he did not smoke, drink, use profanity, or engage in labor on the Sabbath. He added that he did not "do any work that pertains to war in any way." While defendant stated that his parents were members of the (Radio) Church of God, he himself was not affiliated with that or any other sect or denomination.

The defendant did not give the names of any persons as references with respect to his religious beliefs and explained his failure to do so by saying that he knew of no one in the community who believed as he did, that his beliefs were altogether different from those of his neighbors, that they did not observe the same Sabbath that he did, and that the neighbors could not be in a position to judge his sincerity.

On June 11, 1954, the defendant wrote the local board requesting a reclassification. In that letter he took occasion to elaborate to some extent on his religious beliefs and referred the board to certain passages in the Bible. On June 16 the clerk of the local board advised the defendant that the board did not feel that he had submitted sufficient evidence to substantiate his claim, but that his classification would be reopened by the board at its next meeting so that he could appeal if he desired to do so.[2] Defendant was also advised that an appeal from a classification had to be taken within ten days of the date upon which notice of classification was mailed.

On June 20 defendant again wrote the board advising that he desired to appeal, and his file was sent to state headquarters of selective service at Little Rock for forwarding to the appeal board. In his letter of June 20 the defendant reiterated his religious views and supplied additional scriptural citations.

Pursuant to normal procedure a hearing on the defendant's claim was held on September 8, 1954. The defendant appeared at the hearing and apparently testified in his own behalf. It seems, however, that he was not accompanied by anyone, and he called no witnesses. In the course of the hearing he was furnished with a summary of the investigative report of the Federal Bureau of Investigation. That summary, a copy of which is before the Court, indicates that a field investigation of defendant's claim was made by the Bureau in both Arkansas and Cali-

---

1. The record reflects that Armstrong is the head of the Radio Church of God. Although, as the name of that denomination implies, its teachings are disseminated principally by radio, it does employ traveling ministers who go about the country performing some functions such as baptizing converts. The sect apparently believes in Sabbath observance and keeps Saturday, rather than Sunday, as its day of rest.

2. The reopening of the classification was necessary because more than 10 days had elapsed since the board had mailed to the defendant notice of his 1–A classification. See section 1626.2(c) (1) of the Selective Service Regulations, 32 C.F.R. § 1626.2(c) (1).

fornia, in which latter state the defendant had resided for a time and in which the Radio Church of God maintains its headquarters.

After considering the evidence before him, the hearing officer concluded that the defendant had not satisfactorily established his claim to exempt status, and recommended that such claim be denied. That recommendation went to the Department of Justice, which agency, after reviewing the entire file and record, concurred in the views of the hearing officer and recommended to the appeal board that the claim in question "be not sustained."

The Department of Justice's recommendation was in the form of a letter to the appeal board, dated October 28, 1954. Said letter contained a summary of the evidence and of the proceedings before and report of the hearing officer. The letter pointed out that defendant had not made any public profession of his beliefs, that he had not answered the question bearing upon his views as to permissible use of force, and that he was not a member of any religious organization. The defendant was not given a copy of that letter, nor was he supplied with a copy of the full report of the hearing officer to the Department of Justice.

On November 4, 1954, the appeal board by a unanimous vote continued the defendant in Class 1–A, and he was duly notified of that action. There the matter rested for several months.

On March 14, 1955, the Supreme Court of the United States handed down a number of decisions dealing with violations of the Selective Service Act, 50 U.S.C.A.Appendix, § 451 et seq., which decisions included Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L. Ed. 453, and Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467. The gist of the holdings in Simmons and Gonzales was that a selective service registrant claiming exemption as a conscientious objector, who has appealed from a denial of his claim by the local board, has a right to undertake to refute an adverse recommendation of the Department of Justice to the appeal board, and that, in order to exercise that right effectively, he is entitled to have a copy of the Department's recommendation along with a fair summary of any adverse information that has been developed as a result of the F.B.I. investigation.

As noted, the defendant in the instant case had been furnished with a copy of the summary of the F.B.I. report, but had not been given a copy of the Department of Justice's recommendation. Thus, the Simmons and Gonzales decisions were squarely applicable to his case, and, as the matters then stood, had the draft board ordered the defendant to report for induction and had he refused to obey the order, he could not have been prosecuted successfully.

Obviously, Simmons and Gonzales applied not only to the defendant but also to many other persons similarly situated, and the Selective Service System moved promptly to supply the defects in its existing procedures. On April 1, 1955, National Headquarters of Selective Service issued Operations Bulletin No. 123, which bulletin was amended on April 21. That bulletin directed that the teachings of Simmons and Gonzales be applied immediately to all appropriate cases, and that the local boards should reopen and consider anew the classification of every registrant classified in Class 1–A whose case involved a claim of conscientious objection which had been denied by the appeal board or by the President after referral to the Department of Justice. Such reclassification of the affected persons would have given them a new right of appeal in the course of which the requirements of the Supreme Court decisions could have been met.[3]

3. Section 1624.11 of the Regulations provides that, when a local board reopens the file of a registrant, it shall proceed to classification as though he had never been classified before, and that such classification shall have the effect of a new and original classification even though the registrant is again placed in the same

On May 25, 1955, the Arkansas State Headquarters requested the local board to forward the defendant's complete file "for administrative review;" and on May 27, after reviewing the file, state headquarters directed the local board to reopen the case and proceed in accordance with Operations Bulletin No. 123, as amended. On May 31, 1955, the local board reopened the case and again classified the defendant 1–A.[4] Notice of this classification was mailed to the defendant on June 1, 1955, and was duly received by him. He took no appeal from this action of the board, and the board heard nothing from him until September when he advised that he had married in August. He said nothing at that time about his religious beliefs or about his classification.

No further action was taken in the defendant's case until April 16, 1958, when he was ordered to go to Little Rock for a physical examination. He obeyed this order and was found acceptable for military service. It does not appear that he made any complaint about that order or that he at the time questioned his classification.

On June 23, 1958, the board mailed the defendant a notice to report for induction on July 16. Defendant obeyed this order to the extent that he appeared at the induction station at Little Rock and went through the preliminary procedures, but he positively refused to "take one step forward," as directed, which action would have signified his formal induction into the armed forces.

As stated, the order to report for induction was mailed on June 23. There is nothing to indicate that the defendant made any effort to contact the board between that date and July 16, except that he did write a letter, postmarked 8:00 A.M., July 16, wherein he again contended that he should have a conscientious objector classification. He had already left for the induction station when this letter was received at the office of the board.

In resisting the charge against him the defendant contends that the administrative action denying his claim to a conscientious objector classification had no basis in fact and was arbitrary and capricious and that he was denied "procedural due process" in that he was not supplied with copies of the recommendation of the Department of Justice to the appeal board, of the report made to the Department of Justice by the hearing officer, or of the investigative reports of the F.B.I.; and that the local board did not have an appeal agent and did not have one or more advisors for registrants, the lack of which, he claims, was prejudicial to him.[5]

The Government denies that the classification accorded the defendant lacked an adequate factual basis, that the defendant was entitled to copies of the F.B.I. reports and of the report of the hearing officer, and that the lack, if any, of an appeal agent or advisors for registrants affords the defendant any basis for complaint.

class he was in before his classification was reopened. Section 1625.12 provides that when a classification is reopened and the registrant is again classified, he is to be notified of the board action as soon as practicable, and Section 1625.13 provides that each such classification "shall be followed by the same right of appearance before the local board and the same right of appeal as in the case of an original classification."

4. The minute of local board action appearing on the back of defendant's questionnaire shows the date of this action as *May 13*, 1959, but when the minute is read in its entirety and in connection with other entries immediately before and immediately following, it is clear that the *"13"* should be *"31"* and that there was a transposition of figures.

5. Another contention advanced by the defendant was that the induction ceremony at Little Rock was faulty. It is not clear to what extent the defendant ever actually relied upon that contention but in any event the Court finds from the evidence beyond a reasonable doubt that the induction ceremony was properly conducted, that the defendant was given three opportunities to submit to induction and refused to do so, although warned of the possible consequences of his refusal.

■ The Government concedes, as indeed it must, that the failure to supply the defendant with a copy of the recommendation of the Department of Justice was a fatal defect in the original appellate procedure, but it argues that the defect was cured when the defendant's classification was reopened pursuant to Operations Bulletin No. 123 and he was again classified 1–A, and that since he did not appeal from that last classification he has not exhausted his administrative remedies and cannot now collaterally attack the order to report for induction on any ground.

In view of the Government's concession, it is plain that, unless the Government is correct in its contention that the defendant has failed to exhaust his administrative remedies, he is entitled to an acquittal. On the other hand, if the Government is correct in that contention, then the defendant has no basis for collateral attack on the order which he disobeyed, and it becomes unnecessary for the Court to decide whether defendant's classification had an adequate factual basis, whether he was entitled to copies of the F.B.I. reports and the report of the hearing officer, and whether the board failed to have an appeal agent or to provide proper advisors for registrants. After careful consideration the Court is convinced that the Government's position is well taken, and that the defendant must be held to have failed to exhaust his administrative remedies.

■ There is no question that, as a general rule, a defendant in a selective service prosecution may not, as a defense to the criminal charges, collaterally attack his classification unless he has exhausted the administrative remedies provided by the Selective Service Act and the pertinent regulations, which exhaustion includes the utilization of all available administrative appellate procedures. Doty v. United States, 8 Cir., 218 F.2d 93. See also United States v. Palmer, 3 Cir., 223 F.2d 893, certiorari denied 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772, and cases there cited. While there may be exceptional cases in which this general rule should not be applied, this is not such a case.

When the local board reopened the defendant's classification in May 1955 and again placed him in Class 1–A, he acquired a new right of appeal. Had that right been exercised by him, the appeal board was required by the terms of Operations Bulletin 123 to furnish him a copy of the recommendation of the Department of Justice and to advise him that within thirty days he might file a written reply with the appeal board concerning the Department's recommendation.

■ The defendant either knew or was charged with knowledge of his right of appeal and of the time within which such right was required to be exercised.[6] He testified that he had received five classification cards from the local board, and that at least most of them referred to the ten day time limit for appeal. In addition, it will be recalled that in 1954 he had been advised by the local board that an appeal had to be taken within the ten day period. Still, further, the defendant testified that after the controversy had arisen between him and the board he had received advice on the subject from individuals connected with the Radio Church of God, one of whom was a relative of his. Notwithstanding all this, the defendant took no appeal and did not even communicate with the board relative to his claimed religious scruples until more than three years after his 1955 classification, and then only on the day of his departure for the induction

6. The Selective Service Regulations have been published in the Federal Register, and all affected persons are charged with constructive notice thereof, 44 U.S.C.A. § 307. As heretofore noted, defendant was required to appeal within ten days from the date upon which notice of classification was mailed to him, and § 1641.2(b) of the regulations provides that if a registrant fails to claim and exercise any right or privilege within the required time he shall be deemed to have waived such right or privilege.

station. Hence, he failed to exhaust his administrative remedies.

It is argued that the defendant knew nothing of Operations Bulletin No. 123 and for that reason attached no significance to the fact that he had received another classification card in June 1955. It may well be true that the defendant knew nothing about the operations bulletin. But he did know that he had been in a controversy with the selective service officials relative to his status. He knew that his claim of conscientious objection to war had been rejected both by the local board and by the appeal board. And he must have known that sooner or later he would probably be confronted with a choice between entering the armed services or going to the penitentiary. Under such circumstances any action taken by the local board in his case was of vital importance to him; and when he received the new card, which plainly indicated that the board had taken some action, he had no right to assume that such action was without significance as far as his claim for exemption was concerned. It was his duty to take some steps to find out what had happened. It was not the duty of the board to seek him out and explain its action and his rights. It will be remembered in this connection that the defendant was a high school graduate and had shown no hesitancy in writing to the board in 1954 when he was first classified 1–A. He could easily have written again, or he could have called at the board office to learn what had happened in his case.

It is further contended that nothing new had transpired between the rejection of his appeal in 1954 and his reclassification in 1955, and that an appeal from the latter classification would have been futile. Assuming arguendo that in order to exhaust his administrative remedies a registrant will not be required to do a vain thing, and assuming that the defendant had nothing further to offer than he had already offered, the Court cannot agree that a fresh appeal would necessarily have been unavailing. In the course of a new appeal the defendant would have been armed with a copy of the Department of Justice's adverse recommendation, and it cannot be presumed that he would have been unable to convince the appeal board that such recommendation was not justified and that his claim of exemption should be upheld.

While, as stated, the Court's decision that the defendant did not exhaust his administrative remedies renders it unnecessary to consider on their merits his contentions that he was arbitrarily refused the classification sought by him, and that he was denied procedural due process in the respects that have been mentioned, nevertheless, since this is a criminal case, the Court has considered those contentions and is convinced that none of them can be sustained.

██ With regard to the claim that the classification accorded defendant had no basis in fact, it must be remembered that the burden was upon him to establish his right to a conscientious objector classification. See Regulations, sections 1622.1(c) and 1622.10, and Bates v. United States, 8 Cir., 216 F.2d 130, reversed on other grounds 348 U.S. 966, 75 S.Ct. 529, 99 L.Ed. 753. And the local and appeal boards may well have felt that if the defendant's religious convictions were as deep and sincere as he claimed there would have been more objective manifestations thereof than the record discloses. As against the defendant's own statements and certain favorable information developed by the F.B.I. investigation, the appeal board had a right to weigh defendant's lack of affiliation with the church whose tenets he purported to observe, his lack of public utterances of his beliefs, and the fact that he considered the strongest demonstrations of his sincerity were to be found in his abstinence from liquor, tobacco, and profanity and in his refraining from labor on the Sabbath. Conceding those abstinences to be commendable, their practice does not necessarily indicate that the individual concerned is conscientiously opposed to war or military service.

The defendant was clearly not entitled to see the full F.B.I. reports covering his case either in the course of the classification procedure or in connection with the trial of the instant criminal charge. United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; Bouziden v. United States, 10 Cir., 251 F.2d 728, certiorari denied 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759, rehearing denied 356 U.S. 964, 78 S.Ct. 992, 2 L. Ed.2d 1071; Blalock v. United States, 4 Cir., 247 F.2d 615. Nor does the Court feel that defendant was entitled to a copy of the full report of the hearing officer to the Department of Justice. That report was not a part of the record before the appeal board any more than were the original F.B.I. investigative reports. The recommendation of the Department of Justice summarized the views of the hearing officer and the evidence which he heard in a manner not unfavorable to the defendant. The Court is convinced that fundamental fair play would have been satisfied had the defendant been furnished a copy of the Department's recommendation, which was not done, together with the résumé of the F.B.I. reports, which was supplied.

Assuming that the local board had no appeal agent, as provided by section 1604.71 of the regulations, and no panel of advisors for registrants, as provided by section 1604.41,[7] and assuming further that the lack of such agent and advisors was violative of the rights of the defendant, the Court is convinced that no prejudice resulted from such violation. The defendant perfected his original appeal without difficulty, and could have easily appealed from his May 1955 classification without assistance. Moreover, it appears that the defendant had no desire for secular advice with respect to his classification problem, and that he obtained all of the advice that he wanted from the officials of the church.

From the foregoing it follows that the defendant must be convicted of the charge against him, and it is by the Court Considered, Ordered and Adjudged that the defendant is guilty as charged in the indictment. It is further ordered that the defendant may remain at large upon his present bond until the 15th day of February 1960, at 9:30 o'clock A.M., at which time he is to appear before the Court for sentence.

---

7. The evidence is not clear as to whether the board had an appeal agent or a panel of advisors. The clerk of the local board was questioned in that connection by counsel for defendant and did not appear to clearly understand the questions put to her, or to know what was meant by an "appeal agent" or "advisors for registrants."