**UNITED STATES of America,
Plaintiff,**

v.

**Jerry Evan KELLEY, Defendant.
No. 4–71–Crim. 284.**

United States District Court,
D. Minnesota,
Fourth Division.
Jan. 26, 1972.

Neal J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Mark Solstad, Johnson & Eastlund, Minneapolis, Minn., for defendant.

## MEMORANDUM AND FINDINGS

LARSON, District Judge.

Defendant was indicted on September 29, 1971, for two separate violations of the Selective Service Act of 1967, 50 App.U.S.C. § 462. Defendant was charged with:

1. Failing to comply with an order of his local board to report for and submit to a physical examination; and

2. Failing to comply with an order of his local board to report for and submit to induction into the Armed Forces.

The matter was tried to the Court on November 4, 1971.

Defendant originally registered with the Selective Service System on September 20, 1966. Because he was a full time college student, defendant was classified II–S by his local board. He was continued in this classification until August 12, 1970, when he was reclassified I–A.

Meanwhile, on September 15, 1969, defendant submitted to his local board an application for classification as a conscientious objector. In response to this application the local board granted the defendant a courtesy interview before the board on February 11, 1970. Defendant, however, failed to report for the interview. When asked to explain why he failed to report, defendant replied that shortly after he had applied for conscientious objector status he had arrived at the conclusion that he could no longer cooperate with the Selective Service System.

Following defendant's failure to complete two Current Information Questionnaires (SSS Form 127) which had been sent to him by his local board, he was ordered on June 17, 1970, to report for an armed forces physical examination on July 15, 1970. Defendant failed to report for the physical examination. (At this time defendant was still classified II–S by his local board. In all of the questionnaires which defendant had returned to his local board, prior to his decision not to cooperate with the Selective Service System, he had indicated that his prospective graduation date from college was June, 1970.)

On August 12, 1970, following the receipt by defendant's local board of a letter from the Deputy State Director recommending that defendant "be issued an order to report for a physical examination after he is placed in Class I–A," defendant was removed from Class II–S and placed in Class I–A. It does not appear that the local board ever considered

defendant's application to be classified as a conscientious objector.

On August 17, 1970, the notice of his new classification was mailed to the defendant. At this time defendant was also notified of his rights to a personal appearance before his local board and to an appeal to the State Appeal Board. Defendant, however failed to pursue either of these administrative procedures.

On October 19, 1970, defendant's local board mailed to the defendant an order to report for induction on November 16, 1970. On the specified date defendant failed to report. It was this failure which brought about the instant prosecution.

Following trial defendant made a motion for judgment of acquittal on both counts of the Indictment. This motion presents the following issues for the Court's determination:

1. Count One: Whether the local board's order of June 17, 1970, requiring defendant to report for an armed forces physical examination was invalid, thus excusing defendant's failure to report for the physical examination; and

2. Count Two: Whether defendant's challenge to the validity of his order to report for induction on the ground that the local board failed to consider his application for conscientious objector status is precluded by the doctrine which requires exhaustion of administrative remedies.

## COUNT ONE

Defendant argues that the order requiring him to report for a physical examination was invalid because in issuing the order the board failed to comply with the appropriate Selective Service regulations.

The appropriate Selective Service regulations are 32 C.F.R. §§ 1628.11(b) and 1628.11(c). Section 1628.11(b) provides:

"[T]he local board shall mail an Order to Report for Armed Forces Physical Examination (SSS Form No. 223) to registrants who have been classified in Class I–A, Class I–A–O, and Class I–O . . . . ."

Section 1628.11(c) provides:

"The local board may also mail an Order to Report for Armed Forces Physical Examination (SSS Form No. 223) to any registrant who is classified in a class other than Class I–A, Class I–A–O, or Class I–O if it determines that his induction may shortly occur."

Since at the time defendant was ordered to report for a physical examination he was classified in a class other than Class I–A, Class I–A–O, or Class I–O (he was classified II–S), the issuance of his physical examination order was governed by § 1628.11(c).

Defendant argues that his local board failed to comply with the requirements of this regulation in that it failed to determine, prior to the issuance of his order to report for a physical examination, that his induction might shortly occur. He argues that because of this failure the order requiring him to report for a physical examination was invalid.

In support of this argument defendant relies upon the decision of the Ninth Circuit Court of Appeals in United States v. Brandt, 435 F.2d 324 (9th Cir. 1970). In *Brandt* the Ninth Circuit held that where the local board had acted in direct disregard of the clear deferment standards and had thus erroneously classified the defendant I–A, and where the defendant should have been classified in a class other than Class I–A, Class I–A–O, or Class I–O, the defendant "could only be ordered to report for [a physical] examination if the Board specifically determined that . . . [his] induction would occur shortly." 435 F.2d at 326. Since that determination had not been made by the local board, the Court found that the defendant's order to report for a physical examination was invalid. It therefore reversed his conviction for failing to comply with the order.

Since in the instant case the local board also made no specific determination that defendant's induction might shortly occur, the case would seem to fall squarely within the purview of the *Brandt* decision. The Government, however, argues that the reasoning of the Ninth Circuit in *Brandt* is incorrect, and that the instant situation is analogous to the situation involving the issuance of an order to report for induction.

With regard to the issuance of an order to report for induction, 32 C.F.R. § 1632.1 provides:

> "Immediately *upon determining which men are to report for induction,* the local board shall prepare for each man an Order to Report for Induction . . .." (Emphasis added.)

Various cases have raised the question of whether an induction order is valid if the local board fails to meet and make a specific determination that the defendant is to report for induction. See, *e. g.*, United States v. Hansen, 314 F.Supp. 91 (D.Minn.1969); United States v. Hedges, 297 F.Supp. 946 (S.D.Iowa 1969), aff'd on other grounds, 441 F.2d 726 (8th Cir. 1971). In those cases the courts have held that such a failure does not invalidate the order to report for induction.

The Government argues that these cases are analogous to the instant case and that the local board's failure in the instant case to make a specific determination that the defendant's induction might shortly occur should not invalidate the defendant's order to report for a physical examination. This Court, however, cannot agree.

The reasoning of the courts in the cases involving issuance of induction orders has been that the classification of a registrant as I–A by the local board constitutes a determination that the registrant is available for induction. The further determination that he is to report for induction is merely a function of what the registrant's lottery number happens to be. Therefore, after the registrant has been classified I–A, the determination that he is to report for in-

duction is merely an administrative matter which can be handled mechanically by the local board clerk.

This is not the situation with regard to the determination of whether the induction of a registrant who is classified in a class other than Class I–A, Class I–A–O, or Class I–O may shortly occur. In order to make this determination there must first be a determination that the registrant's deferment will shortly expire and also that he will not then qualify for a deferment in a different classification. These preliminary determinations, and especially the latter, can only, under most circumstances, be made by the board itself. They are not in most situations administrative matters which can be handled mechanically by the local board clerk.

Admittedly there may be certain situations in which these preliminary determinations can be, and are in fact, handled mechanically by the local board clerk, but the Government has made no showing that such was the situation in the instant case.

■ Therefore, in the absence of such a showing by the Government, the failure of the local board to make a specific determination that defendant's induction might shortly occur is, in this Court's opinion, fatal to the validity of his order to report for a physical examination. Consequently, since his order to report for a physical examination was invalid, he was not under a duty to report. He must therefore be acquitted of the charge in Count I of the Indictment.

## COUNT TWO

Defendant argues that the order requiring him to report for induction was invalid because the local board erred in classifying him I–A. He claims that he should have been classified as a conscientious objector, and that, as such, he would not have been required to submit to induction into the armed forces.

■ Defendant's argument, however, ignores the fact that after being notified that he had been reclassified I–A

defendant failed to seek a personal appearance before the local board or to appeal the local board's decision to the State appeal board. The recent decision of the United States Supreme Court in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), makes it abundantly clear that such a failure to exhaust administrative remedies precludes a registrant from raising as a defense to a prosecution for failing to comply with an order to report for induction the claim that the local board erred in refusing to classify him as a conscientious objector.

Defendant, however, argues further that the local board failed to even consider his conscientious objector application, that this failure constituted a denial of due process, and that the McGee decision should not be read to preclude him from raising this alleged denial of due process as a defense to the instant prosecution.

Although there is a dearth of evidence on the issue of whether the local board did in fact fail to consider defendant's conscientious objector application, what little evidence that does exist leads this Court to the conclusion that the defendant is correct in his assertion. It appears that the local board did in fact fail to consider defendant's conscientious objector application.

This conclusion, however, does not dispose of the matter because, as this Court reads McGee, defendant's failure to exhaust his administrative remedies nevertheless precludes him from raising this due process claim as a defense to the instant prosecution. A close examination of the Supreme Court's reasoning in McGee supports this determination.

The facts in McGee are remarkably similar to those presented by the instant case. In McGee the defendant was charged with failing to submit to induction and other violations of the Selective Service laws. As in the instant case, the defendant in McGee was classified

II–S when he submitted an application for classification as a conscientious objector. The defendant subsequently decided that he could no longer cooperate with the Selective Service System. Following the expiration of his II–S deferment, defendant was reclassified I–A. Because of his decision not to cooperate with the System, he failed to take any administrative appeal from this reclassification decision. He was subsequently ordered to report for induction but failed to comply with the order. When prosecuted for this offense, defendant attempted to raise as a defense the claim that he had been erroneously classified I–A, and that he should have been classified as a conscientious objector. The Supreme Court held that defendant's failure to exhaust his administrative remedies precluded him from raising this claim as a defense to the prosecution.

As in the instant case, there was a dispute in McGee as to whether the local board had even considered the defendant's application for classification as a conscientious objector. The Trial Court in McGee determined that the local board had considered the defendant's application,[1] and the Supreme Court accepted this determination.[2]

Defendant argues that this fact alone is sufficient to distinguish the instant case from McGee. He claims that the reasoning of the Supreme Court in McGee and in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), (a previous Supreme Court decision dealing with the exhaustion doctrine in Selective Service cases) supports this contention. This Court does not agree.

Although the Supreme Court in McGee did not indicate whether the case would have been decided differently had it determined that the local board had never considered the defendant's conscientious objector application, a thorough examination of the Supreme Court's rea-

1. See 402 U.S. at 489 n. 10, 91 S.Ct. at 1571 n. 10.

2. Id.

soning has convinced this Court that such a determination would not have altered the *outcome of the case.* The Supreme Court reasoned that:

> "[T]he contention that the rigors of the exhaustion doctrine should be relaxed . . . should be assessed in light of a discrete analysis of the particular default in question, to see whether there is 'a governmental interest compelling enough' to justify the forfeiting of judicial review." 402 U.S. at 485, 91 S.Ct. at 1569.

In *McGee* the pivotal governmental interest for purposes of this analysis was the interest in allowing the agency to make a factual record, to exercise its discretion and to apply its expertise. 402 U.S. at 485–486, 91 S.Ct. at 1569. The Supreme Court reasoned that since the determination of the validity of conscientious objector claims turns on the resolution of factual questions, the interest of the Government in allowing the agency to make a factual record, to exercise its discretion and to apply its expertise—at least in conscientious objector cases—is paramount. The Court found that defendant's failure to exhaust his administrative remedies had jeopardized this governmental interest in that it "not only deprived the appeal board of the opportunity to 'apply its expertise' in factfinding to the record that was available; it also removed an opportunity to supplement a record containing petitioner's own submissions but not containing the results of any specific inquiry into sincerity." 402 U.S. at 490–491, 91 S.Ct. at 1572.

In short, the defendant's failure to exhaust his administrative remedies had deprived the agency of an opportunity to remedy its alleged error or to at least develop a more complete factual record for the courts. And the alleged error in *McGee* was exactly the type of error which the administrative appeal process was designed to remedy.

Likewise, in the instant case the interest in allowing the agency to make a factual record, to exercise its discretion and to apply its expertise was pivotal. And, like *McGee*, the defendant's failure to exhaust his administrative remedies jeopardized this governmental interest. Had defendant pursued his administrative remedies, the agency could have made a factual record, could have exercised its discretion, and could have applied its expertise with regard to defendant's conscientious objector application. Furthermore, the alleged error of which defendant now complains would clearly have been remedied—*i. e.*, although the local board may not have considered defendant's conscientious objector application, if the defendant had pursued his administrative remedies after being notified of his I–A classification, his conscientious objector application would clearly have been considered both by the local board (via the personal appearance) and by the appeal board (on appeal if the local board had refused to reclassify him as a conscientious objector after the personal appearance).

By failing to bring his conscientious objector application to the attention of the local board or the appeal board after he was classified I–A, defendant deprived the agency of an opportunity to remedy its alleged error. And, as in *McGee*, the alleged error in the instant case is exactly the type of error which the administrative appeal process is designed to remedy.

At this point it is worthwhile to distinguish the instant case from *McKart v. United States, supra.* In *McKart* the defendant was convicted of failing to submit to induction. Prior to being classified I–A, defendant had been deferred as the "sole surviving son" of a family whose father had been killed in action while serving in the Armed Forces.[3] Following the death of defend-

---

3. "Except during the period of a war or a national emergency declared by the Congress after the date of the enactment of the 1964 amendment to this subsection [July 7, 1964], where the father or one or more sons or daughters of a family were killed in action or died in line of duty while serving in the Armed Forces of the

ant's mother, the local board reclassified defendant I–A. It removed his sole surviving son deferment on the ground that since his "family unit" had ceased to exist, he was no longer entitled to sole surviving son status. The defendant failed to pursue the available administrative remedies following this reclassification. After being ordered to report for induction and failing to comply with the order, defendant was prosecuted for this offense. At trial his only defense was that the local board had erroneously interpreted the statute granting the sole surviving son deferment. He claimed that he should have been exempt from military service as a sole surviving son regardless of the death of his mother.

On appeal the Supreme Court agreed with the defendant and held that the death of defendant's mother could not operate to deprive him of his right to be exempt from military service as a sole surviving son. The Government, however, argued that notwithstanding this error by the local board, the defendant's failure to exhaust his administrative remedies should preclude him from raising this error as a defense to the criminal prosecution. The Supreme Court did not agree. It stated that the exhaustion doctrine is not to be "applied blindly in every case." 395 U.S. at 201, 89 S.Ct. at 1666. It reasoned that since the determination of whether the defendant qualified for the exemption did not involve the development of a factual record, or the exercise of administrative discretion or the application of administrative expertise, the failure of defendant to exhaust his administrative remedies had not jeopardized the governmental interest in each of these functions being carried out by the Selective Service System. Since the determination of whether the

defendant qualified for the exemption involved merely a question of statutory interpretation, an administrative appeal would not have aided in the disposition of defendant's case because the courts would in no way have been bound or assisted by the interpretation which the agency might have given to the statute. Thus, the Court held that since there appeared no significant interest to be served in having the agency decide the issue before it reached the courts, the defendant's failure to exhaust his administrative remedies should not preclude him from raising the issue in his defense to the criminal prosecution.

This was not the situation in the instant case. As discussed above, defendant's failure in the instant case to exhaust his administrative remedies did jeopardize the interests which administrative review within the Selective Service System is designed to serve. He therefore is precluded from raising, as a defense to the instant prosecution, the alleged failure of the local board to consider his conscientious objector application.[4] His motion for judgment of acquittal must therefore be denied.

■ Two essential elements must be proved in order to establish the charge in the second count of the Indictment:

First, a valid order requiring defendant to report for and submit to induction into the Armed Forces; and

Second, the defendant's knowing refusal to obey such an order.

The defendant is found guilty of the charge in the second count of the Indictment, the Government having proved his guilt beyond a reasonable doubt.

The defendant is acquitted on the charge in the first count of the Indictment.

United States, or subsequently died as a result of injuries received or disease incurred during such service, the sole surviving son of such family shall not be inducted for service under the terms of this title . . . unless he volunteers for induction." Selective Service Act of 1948,

§ 6(o), 62 Stat. 613, as amended, 50 U.S.C.App. § 456(o).

4. For a decision suggesting that this is the proper result, see the Second Circuit's opinion in the *McGee* case, 426 F.2d 691, 699 (2nd Cir. 1970).