Gayle Norman GLOVER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16456.

United States Court of Appeals
Eighth Circuit.

Jan. 26, 1961.

J. B. Tietz, Los Angeles, Cal., for appellant.

Ralph M. Sloan, Asst. U. S. Atty., Little Rock, Ark., and Osro Cobb, U. S. Atty., Little Rock, Ark., on the brief, for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

**REGISTER, District Judge.**

This appeal is from a judgment of conviction after trial without a jury upon an indictment charging a refusal to submit to induction into the armed forces of the United States, in violation of Section 462(a), Title 50 U.S.C.A.Appendix. The defendant (appellant) had based his claim for exemption as a conscientious objector on Section 6(j) of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 456(j). The claim had been rejected by the local Selective Service authorities. The indictment had been returned on March 3, 1959, and, following entry of a plea of not guilty by defendant, and waiver of trial by jury, the defendant was tried to the court, found guilty, and sentenced on February 15, 1960, to four years imprisonment.[1]

Defendant was born on December 2, 1935. He registered with Local Board 23, Conway, Faulkner County, Arkansas, Selective Service System, on December 8, 1953. His registration card was mailed to and received by him. Classification Questionnaire (SSS Form 100) was likewise mailed to and received by defendant. Said form was filled out by defendant and returned to the local board on February 10, 1954. Therein defendant indicated that he was a senior high school student, due to graduate in June, 1954. Therein he also expressed his opinion to be that his classification should be "Class C.O.", giving, as his reason therefor, that "I don't believe in anything that pertains to war or killings." On March 1, 1954, the local board classified him 1–S(H), high school student, and mailed to him a Notice of Classification, SSS Form 110. In May the Board sent him a Special Form for Conscientious Objector, SSS Form 150, which he thereupon executed and returned on June 2. In this form, in response to the question concerning the nature of registrant's belief which is the basis of claim for exemption, defendant stated: "My Supreme Creator teaches me 'Thou shall not kill or participate in war in any kind. Yes my belief in a supreme being involves duties which to me are superior to those arising from any human relation."

On June 1 the local board classified defendant 1–A; on June 2, defendant was mailed his second Notice of Classification, SSS Form 110, classifying him 1–A. On June 11 defendant wrote to the local board, asking for reclassification because of his religious beliefs. In this letter defendant stated specifically the reasons for his personal conscientious opposition to participation in war in any form, and the source of such opposition in religious training and belief. Included in said letter is the following: "I object to killing or taking part in war of any kind. The reason I object to killing is because it is sin, the penalty of which is death, and I should lose eternal life. I should rather lose this mortal life, and be resurrected by God to life eternal." The local board reopened its classification by mailing to defendant his third Notice of Classification of 1–A on June 21, to which last Notice defendant responded on June 22 by letter, requesting an appeal of such classification. Therein defendant again expressed himself as to his personal beliefs. In part he referred to himself as an "Ambassador for Christ", that his life is "dedicated to His cause", that he must follow Christ's policy (as understood by him) "even at cost of my life", that "Jesus also teaches me to be submissive to the powers that be, yet to obey God rather than man. In this case I would have to obey God, and submit to whatever penalty the government might impose. God is my King." He therein further states: "I believe war is wrong because God condemns it * * *. I believe God's ways are right. Killing is a sin, the penalty of which is death." He also quoted various passages of Scripture as the basis for his beliefs, together with his interpretation thereof.

In accordance with appellate procedure, defendant's file was sent to state headquarters of the Selective Service System at Little Rock, and thereafter forwarded to the Appeal Board. In September a

1. The trial court's opinion is reported at 179 F.Supp. 302.

hearing, at which defendant appeared, was had before a Hearing Officer. The recommendation of the Hearing Officer, which was forwarded to the Department of Justice, was that defendant's claim "not be sustained". The recommendation of the Department of Justice to the Appeal Board (which was in the form of a letter dated October 28, 1954) was also adverse to defendant. The defendant was not furnished a copy of the recommendation from the Department of Justice to the Appeal Board. On November 4 the Appeal Board unanimously voted to continue defendant's 1–A classification. Notice of such classification by the Appeal Board was mailed to defendant on November 8, 1854. Thereafter, under date of November 29, defendant again wrote to the local board. In said letter he acknowledged receipt of the card notifying him of his 1–A classification by the Appeal Board, and again reiterated his belief that he should be reclassified. He therein further expressed himself concerning his personal religious beliefs and convictions by referring to certain Biblical passages as the source of such beliefs, and stating: "Killing is a sin and sin is the transgression of God's law * * *", "I believe war is wrong because God condemns it * * *", and "I believe God's ways are right. Killing is a sin the penalty of which is death * * *".

On June 1, 1955, the local board mailed to defendant the fifth and final notice of classification (SSS Form 110) 1–A. No administrative appeal was taken therefrom. Defendant was thereafter ordered to report for induction on July 16, 1958. He appeared at the induction station as ordered, but refused to be inducted; this prosecution followed.

Section 6(j) of the Universal Military Training and Service Act, supra, provides:

"Nothing contained in this title (sections 451–454 and 455–471 of this Appendix) shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * *"

Defendant's first contention is that he made a prima facie case for a conscientious objector classification, and that there is no basis in fact for the 1–A classification which the board gave to him. He therefore contends that the action taken by the board was beyond its jurisdiction and void. He also asserts, in effect, that the adverse recommendation of the Department of Justice to the Appeal Board was erroneous as a matter of law because of the use of illegal standards, and that, as the board had no legitimate ground upon which to base its denial of defendant's classification as a conscientious objector the entire proceedings were vitiated.

In view of the Government's concession, on this appeal, that there was no basis in fact for the 1–A classification of the defendant in this case, a detailed discussion based upon a careful analysis of the draft board's files and records as to this registrant is unnecessary. We will go no further than to say that we have made such an analysis and that, in our opinion, such files and records disclose that the Government's concession is wholly warranted.[2]

Also, in view of such concession and the fact that the recommendation of the Department of Justice to the Appeal Board is purely advisory and not binding

---

2. This concession "does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed". Young v.

upon the Appeal Board (Section 456(j), Title 50 U.S.C.A.Appendix; Gonzales v. United States, 348 U.S. 407, 412, 75 S.Ct. 409, 99 L.Ed. 467), we find it unnecessary on this appeal to consider the question of whether such recommendation was, or was not, erroneous as a matter of law.

The Government, with commendable candor, states specifically that its case "stands or falls" upon the proposition that solely because defendant failed to appeal from the fifth classification of 1–A, he failed to exhaust his administrative remedies, and therefore he is precluded from asserting the invalidity of the administrative order and judicial review must be denied. Defendant contends that the so-called strict exhaustion rule has been relaxed by the courts from time to time, for good cause, and that the factual situation in this case not only justifies but requires this Court so to do here. This is the narrow issue presented on this appeal.

The decisions of the United States Supreme Court in Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453, and Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, were announced on March 14, 1955. Following United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, the Supreme Court in Simmons, supra, held that Section 6(j) of the Act required that a fair résumé of any adverse evidence in the investigator's report to the Department of Justice, be furnished to the registrant, in order that he might effectively attempt to refute the same; that the furnishing of the same was an essential element in the processing of conscientious objector claims, and that if the registrant were not furnished therewith, he was thereby deprived of a fair hearing within the terms of the Act.

In Gonzales, supra, the Supreme Court in effect held that the Act and Regulations required that the registrant also be furnished with a copy of the Justice Department's recommendations to the Appeal Board, and accorded a reasonable opportunity to reply thereto. These decisions were applicable to appellant's case.

In order that the law as stated in Simmons and Gonzales be properly applied to all appropriate existing cases, National Headquarters of Selective Service, on April 1, 1955, issued its Operations Bulletin No. 123, which was amended on April 21, 1955. This bulletin directed that the local boards reopen and reconsider the classification of every registrant classified 1–A, which involved a claim of conscientious objection which had been denied by the Appeal Board or by the President, after referral to the Department of Justice. The purpose of this procedure was that such registrants be reclassified, and in event of an appeal, the requirements set forth in Simmons and Gonzales be met.

Following receipt by the Arkansas State Headquarters, Selective Service System, of this bulletin and amendment thereof, and on May 25, 1955, it requested the local board to forward defendant's complete file "for administrative review". On May 27, after reviewing the file, state headquarters directed the local board to reopen the case and to proceed in accordance with said Bulletin No. 123. On May 31, the local board again classified the defendant 1–A; notice thereof was mailed to the defendant on June 1, 1955, was received by him, and no appeal therefrom was taken.

■ It is clear by established law that, as there was no basis in fact for defendant's 1–A classification, his conviction cannot be sustained on the merits. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Batterton v. United States, 8 Cir., 260 F.2d 233.

It is also clear that, prior to the fifth notice of classification 1–A, had defendant been ordered to report for induction and had refused "to take one step forward" as directed, he could not have been

---

United States, 315 U.S. 257, 258–259, 62 S.Ct. 510, 511, 86 L.Ed. 832; approved

in Gibson v. United States, 329 U.S. 338, 344, 67 S.Ct. 301, 91 L.Ed. 331.

successfully prosecuted, because of a fatal defect in the appellate proceedings. While he had been furnished with a resume of the F.B.I. report to the Department of Justice, as required by United States v. Nugent, supra, and Simmons v. United States, supra, he had not been furnished a copy of the recommendation from the Justice Department to the Appeal Board, as required by Gonzales v. United States, supra.

■ As a general rule, a defendant in a Selective Service prosecution may not, as a defense to the criminal charges, collaterally attack his classification unless he has exhausted the administrative remedies provided by the Selective Service Act and pertinent regulations. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331; Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; Bjornson v. United States, 9 Cir., 272 F.2d 244; and Van Bibber v. United States, 8 Cir., 151 F.2d 444.

The interpretation placed on Falbo and Estep by the various courts of appeal and district courts has not been uniform. See: discussion by L. Hand, C. J., in United States ex rel. Kulick v. Kennedy, 2 Cir., 157 F.2d 811, 813–814. Also see: United States v. Palmer, 3 Cir., 223 F.2d 893. In Palmer, Goodrich, C. J., speaking for the majority, apparently considered the exhaustion of administrative remedies rule not inflexible, as he stated, at page 896:

"In argument and brief we have been given an analysis of the authorities bearing upon the legal question; when must one exhaust his administrative remedies before court help is available? That problem is always interesting and sometimes a very difficult one and we are grateful to counsel for appellant for his analysis of it. However, we do not think we must thread our way among delicate distinctions in this case. This defendant not only has failed to exhaust his administrative remedy; he ignores the whole carefully prepared system altogether."

In that case the defendant had even refused to fill out the required questionnaire. The Court, after citing Falbo, Estep, Dickinson and many decisions of the courts of appeal of various circuits, continued:

"As we have already said, however, we do not think these cases bear upon our problem except by inference because here the whole remedial process has been ignored by the defendant."

Maris, C. J., in his dissent, carefully analyzed Falbo and Estep and cited decisions of courts of appeal and district courts as authority for the statement that

"The courts of appeals and district courts have been divided as to whether exhaustion of all administrative remedies must be shown in these selective service cases."

Thereafter Judge Maris stated:

"Accordingly I do not think that the law is inflexibly to the effect that never, under any circumstances, could the courts permit the defense of the invalidity of the board's order to be interposed if the registrant had not exhausted his intermediate administrative remedies. For the doctrine of exhaustion of administrative remedies is not an inflexible rule of the law and in appropriate cases the courts have declined to apply it."

In Doty v. United States, 218 F.2d 93, at page 96, this Court used the following language:

"Defendants say that their classification was arbitrary and without basis in fact because the evidence before the board showed their previous convictions and hence the board was required to put them in the classification of undesirables, to-wit IV–F. Sec. 456(m), heretofore quoted, makes no such requirement. Whether defendants' previous convictions made them unacceptable for service is a question within the discretionary judgment of the draft

board in the first instance and later of the military authorities. Furthermore, there was no appeal from the draft board's classification. *Ordinarily a failure to exhaust administrative remedies precludes the raising of a question of the propriety of the draft board's action. There is no justification in this case for relaxing that rule."* (Emphasis added.)

Therefore, while this Court in Doty adhered to the general rule heretofore discussed, it specifically recognized that such rule is not inflexible but may, under certain circumstances, be relaxed.

In Batterton v. United States, supra, the defendant was convicted of refusing to report for induction into military service. The judgment appealed from was reversed on the basis of the teachings of the Supreme Court in Estep, supra, and Dickinson, supra. While in Batterton (as in Dickinson, supra) the statement of facts indicates that the defendant had exercised his administrative right to appeal from the local board's classification, no further comment was made in the court's opinion concerning the necessity of exhaustion of administrative remedies. In Batterton, this Court stated [260 F.2d 236]:

"As we understand the Dickinson case, it is authority for the proposition that if there is no basis in fact for the classification which a local board gives a registrant, its action in that regard is beyond its jurisdiction (at page 394 of 346 U.S., at page 156 of 74 S.Ct.) and is subject to review by the courts."

In Moon v. United States, 5 Cir., 220 F.2d 730, 733, the defendant was convicted of refusal to submit to induction. Appellant, according to the statement of facts, had appealed from the local board's classification. However, he had failed to appear in person before a hearing officer, although he had been notified so to do on three separate occasions. To the third notice he had not even replied. The Court of Appeals, in setting aside the conviction and sentence, stated:

"In the present case, there was no known evidence offered by the Government before the Board to dispute appellant's statement, made on proper form, of his conscientious objection to war within the meaning of the statute, although he was very dilatory and failed to appear at the hearing by the Department of Justice or before the Board of Appeals."

It is significant that the appellant had made no personal appearance before his local board—which right to make such personal appearance was specifically referred to by the Supreme Court in Falbo as being a part of the selective service process.

For an interesting discussion by a district court, see: Ex Parte Fabiani, 105 F.Supp. 139.

We are firmly convinced that not only do the facts appearing in the instant case justify relaxing the general rule, but compel such action in order to prevent a complete miscarriage of justice.

The fifth notice of 1–A classification sent to defendant Glover was an exact duplicate, except as to date, of former notices. It was an exact duplicate, except as to date, of the notice of classification from which he had previously unsuccessfully appealed. Following receipt of his fourth notice (after action by the Appeal Board), and prior to the issuance of said fifth notice, defendant had again, in writing, reiterated to the local board his claim for exemption, and had again stated his religious beliefs in opposition to war and the source of such beliefs. Therefore, prior to this fifth notice, the appellant had exhausted the appeal procedure provided by the Act, and, in connection with the appeal from such previous classification, had submitted all the evidence he had. The local board was thoroughly familiar with defendant's position. The fifth classification notice followed the board's reopening of defendant's case by reason of an unpublished directive to the local board from State Headquarters, the context of which was not generally circulated or made known.

This directive, in turn, was based upon advice and recommendations contained in Operations Bulletin No. 123, as amended, from National Headquarters to State Headquarters. Said Bulletin was also unpublished, and was an interdepartmental communication publicly unobtainable. It is significant that this fifth classification did not result from the reopening of classification requested by appellant, or as a result of additional information submitted to the local board by him. Defendant had no knowledge of the reason for the mailing of this fifth notice; nothing whatsoever was communicated to him to indicate such reason. While this fifth notice did again, in form, notify appellant of his right to appeal, the failure on the part of the local board to explain to or inform defendant of the reason therefor (whether intentional or not) effectively deprived him of knowledge of the significance of such action. Such knowledge was essential to an understanding of his rights and of the necessity of further action by him to enable him to properly exercise and protect his rights. In the absence of such explanation or additional information, the appellant might, as a reasonable person, assume and believe that nothing further was required or could be done, that an appeal would be meaningless, repetitious, fruitless and vain, and that the procedure therein involved and the manner of exercising his rights would be exactly the same as that which he had already experienced and as a result of which an adverse determination had been made. Under the facts of this case we believe defendant was amply justified, as a reasonable person, in feeling that nothing further could be accomplished by appellate procedure. That appellant so believed is established by his testimony that "I had already written everything that I knew and could think of to write. There was no further reason for writing anymore." Under the existing circumstances we believe the local board owed a duty to appellant to advise him as to the reason for the fifth classification notice, and that its failure to do so was arbitrary, unfair and tantamount to the withholding of vital and essential information to which he was entitled as a basis for the exercise of his rights. Appellant had already unsuccessfully appealed from a previous similar notice. This fact was a matter of record and was known to the local board. In the absence of information as to the reason for the fifth notice, was defendant required to appeal from it? Or would he be so required to appeal from a sixth, or seventh, or an eighth similar notice.

In Clark v. United States, 9 Cir., 236 F.2d 13, the Court said, at page 21: "A registrant is not entitled to repetitious determinations of identical issues." The converse should be equally true. See: Davidson v. United States, 9 Cir., 218 F.2d 609, and United States v. Zieber, 3 Cir., 161 F.2d 90.

The maintenance of fair procedures is essential to the administration of justice. According to Congressional declaration (62 Stat. 605, 50 U.S.C.A.Appendix § 451(c)), the over-all operations of the Act and regulations pertinent thereto were designed to be fair and just. Under the circumstances here existing, the failure on the part of the local board to convey to defendant any reason or explanation for the repetitious fifth classification of 1-A was contrary to our concept of fairness and basic justice. In our opinion, under the facts of this case, appellant's failure to appeal from the fifth and last classification constituted and should be construed and considered, at most, a procedural irregularity. It is our view that this Court is not impotent and without jurisdiction to grant judicial review and overturn the action of the local board, which action was contrary to the Act and regulations and beyond its jurisdiction; the demands of justice require such action on our part.

We adhere to the general rule as to the necessity for exhaustion of administrative remedies in order to obtain a judicial review, and are of the opinion that such rule is generally applicable and usually necessary. However, we are

of the view that such general rule is not absolute, inflexible and without exception, but that it is to be relaxed only under extremely exceptional and unusual circumstances. The factual situation presented in this case is appropriate for and requires the relaxation of such rule.

The judgment and sentence appealed from is

Reversed.