**UNITED STATES of America,**
**Plaintiff,**

v.

**Leland Laird HOLBY, Defendant.**

**No. 71 Cr. 507.**

United States District Court,
S. D. New York.

June 29, 1972.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, by George E. Wilson, Asst. U. S. Atty., New York City, for the United States.

New York Civil Liberties Union, by Marvin M. Karpatkin, and Barry Satlow, New York City, for defendant.

CANNELLA, District Judge.

The defendant's motion for a judgment of acquittal, made pursuant to Rule 29 of the Federal Rules of Criminal Pro-

On May 12, 1971, a one-count indictment was filed charging the defendant with refusing to submit to induction in violation of 50 U.S.C. App. § 462(a).[1] On May 24, 1971, the defendant pleaded not guilty, thereby placing in issue each material element in the indictment. In addition, the defendant has asserted the affirmative defense that the order for induction was invalid because the order of call requirement of the Selective Service Act was violated. The case was tried non-jury[2] from February 17 to February 28, 1972.

There is essentially no dispute between the parties as to the chronological course of events. On May 23, 1967, shortly before his graduation from college, the defendant requested a SSS Form 150 (Special Form for Conscientious Objector).[3] On June 5, 1967, he filed the completed form, along with seven supporting letters and two pamphlets, with his local board.[4] On July 19, 1967, the local board reviewed his conscientious objector claim

1. The indictment states in substance that the defendant being a registrant to whom an Order to Report for Induction had been mailed by his Selective Service System Local Board, unlawfully and knowingly failed, neglected and refused to submit to induction into the armed forces of the United States.

2. The defendant executed a waiver of trial by jury on February 17, 1972.

3. Defendant's exhibit A.

4. Defendant's exhibit C.

and rejected it, classifying him 1–A. Thereafter, by a letter dated July 31, 1967, the defendant requested, *inter alia*, a personal appearance before the local board,[5] which he attended on September 6, 1967. On September 13, 1967, the local board classified him 1–A. On October 12, 1967, the defendant mailed a letter to the local board requesting an appeal of this classification. On appeal, the New York State Selective Service Appeal Board on February 9, 1968, classified him 1–A. On February 20, 1968, he was issued an induction order and on April 15, 1968, he refused induction. Thereafter, the United States Attorney for this district declined prosecution and the New York State Selective Service Headquarters, by a letter dated October 11, 1968, notified the local board of this fact.[6] In accordance with the directions in that letter, the local board asked the defendant to attend a local board meeting on November 13, 1968 for a courtesy interview. The defendant failed to attend.[7] On November 25, 1968, the local board notified the defendant that it had reviewed his case at the November 13th meeting and declined to reopen his classification.[8] On November 29, 1968, the New York State Selective Service Headquarters directed the local board to reopen the defendant's classification and consider it anew.[9] The defendant thereafter refused the local board's renewed request to appear at its meeting. On May 5, 1969, the local board reopened the defendant's classification and classified

him 1–A. The following day he was notified of his rights to a personal appearance and an appeal. He exercised neither right and, on June 10, 1969, he was issued an order requiring him to submit to induction on July 9, 1969. On the specified date the defendant appeared at the induction center but refused induction. This prosecution ensued.

The three basic issues presented in this case are (1) whether the defendant has failed to exhaust his administrative remedies and is thereby precluded from asserting that there is no basis in fact for the local board's classification; (2) whether the defendant was denied due process by the refusal of the local board to grant his request that his attorney be allowed to accompany him to the courtesy interview; and (3) whether the defendant's order to report was invalid because it was issued in violation of the "order of call" regulations.

### Doctrine of Exhaustion of Remedies

■ A defendant in a criminal prosecution for failure to submit to an induction generally is precluded from raising the defense of lack of basis in fact in his classification if he has failed to exhaust his administrative remedies. McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). The courts, while recognizing that this requirement should not be applied inflexibly,[10] nevertheless have held that it should only be relaxed in the face of special justify-

---

5. Defendant's exhibit G.

6. Government's Exhibit 2–D. The letter reads as follows:

   Subject: HOLBY, Leland Laird
   SS No 30–10–45–1463
   Dear Sir:
   We are returning the Cover Sheet (SSS Form 101) of the above-named registrant in whose case the U. S. Attorney for the Southern District of New York has declined prosecution based on the evidence in the file.
   In view of the above the local board should call the registrant for a courtesy interview to determine the sincerity and depth of his beliefs and whether he is eligible to be classified as a conscientious objector.

   Kindly acknowledge receipt of the cover sheet by signing and returning the duplicate of this letter.
   For the State Director

7. The defendant would not attend the meeting unless he was allowed to have both legal counsel and a stenographer or tape recorder present. In addition, he felt that his file was complete and that the local board could reach a decision without further testimony. Government's exhibit 2–F.

8. Government's exhibit 2–G.

9. Government's exhibit 2–H.

10. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1965).

ing circumstances. United States v. Houston, 433 F.2d 939, 940 (2d Cir. 1970), cert. denied, 403 U.S. 910, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971); Lockhart v. United States, 420 F.2d 1143, 1147 (9th Cir. 1969) (en banc). A court therefore must make "a discrete analysis of the particular default in question, to see whether there is 'a governmental interest compelling enough' to justify the forfeiting of judicial review". McGee v. United States, 402 U.S. at 485, 91 S.Ct. at 1569. In *McGee,* the crucial governmental interest was that of allowing the Selective Service Board to make a factual record to exercise its discretion, and to apply its expertise. 402 U.S. at 485–486, 91 S.Ct. 1565. The Court found that since the determination of the validity of conscientious objector claims turns on the resolution of factual questions, the defendant's failure to appear in person before the local board deprived the Selective Service System of an opportunity to supplement the record of relevant facts. In addition, the Court held that defendant's "failure to take an administrative appeal not only deprived the appeal board of the opportunity to 'apply its expertise' in factfinding to the record that was available; it also removed an opportunity to supplement a record containing [defendant's] own submissions but not containing the results of any specific inquiry into sincerity." 402 U.S. at 490–491, 91 S.Ct. at 1572.[11]

After an examination of the entire record, the court is convinced that the defendant's failure to appear before his local board for a courtesy interview, and his refusal to appeal was a studied and obstructionist effort on his part to prevent the Selective Service System from performing its factfinding function. The defendant asserts that he was frustrated by the Selective Service System. The court finds, however, that it was the defendant who frustrated the Selective Service. Following the United States Attorney's original refusal to prosecute, the local board was directed to call the defendant in for a courtesy interview in order to evaluate the depth and sincerity of his beliefs as a conscientious objector.[12] However, when the local board requested the defendant to appear, the defendant in effect refused to do so.[13] The defendant conceded at trial that at this point of time in November, 1968 he knew that the United States Attorney had declined to prosecute him.[14]

The court also notes that the defendant is a college graduate with above average intelligence and that he was aided by legal counsel specializing in selective service law during a major portion of the relevant times concerning this case.[15] The court is persuaded that the defendant's failure to appear at the courtesy interview and his subsequent refusal to appeal was a studied, educated attempt to maintain his case at the point immediately following the United States

11. See also United States v. Quattrucci, 454 F.2d 58 (1st Cir. 1972); United States v. Zmuda, 423 F.2d 757 (3rd Cir.), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970); Lockhart v. United States, 420 F.2d 1143, 1147 (9th Cir. 1969) (en banc); United States v. Kelley, 337 F.Supp. 865 (D.Minn.1972); cf. Roudebush v. Hartke, 404 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972).

12. Government's Exhibit 2–D.

13. The defendant stated that he would only appear if the local board allowed him to appear with legal counsel and a stenographer or tape recorder. Since the defendant was represented by legal counsel knowledgeable in selective service law, he apparently knew that this was a futile request. See 32 C.F.R. § 1624, 1(b). In any event, the local board notified him that this request would not be granted. The court therefore finds that the defendant's conduct at this time was tantamount to refusal.

14. See Trial Minutes, Feb. 22, 1972. Compare Government's Exhibit 2–D with Government's Exhibit 2–X.

15. The court also finds that the defendant was very sensitive and articulate with regard to his rights under the selective service laws and in fact mentioned consulting the "Conscientious Objector Handbook" during this period. See Trial Minutes, Feb. 23, 1972.

Attorney's declination of prosecution. The defendant apparently assumed that in view of the incomplete record before the local board, the United States Attorney would not prosecute unless a fuller record were made. On the other hand, if he appeared at the local board meeting, he might incriminate himself.[16] The court therefore finds after an analysis of the totality of the evidence in this case that the defendant, by his refusal to attend a courtesy interview or to appeal his classification, thwarted the efforts of the local board to make a factual record and apply its expertise and also prevented the Selective Service System from correcting its own mistakes. Although the classification of a registrant is a matter within the particular province of the Selective Service System, the defendant in effect attempted to classify himself. The court concludes that the defendant knowingly failed to exhaust his administrative remedies and is therefore barred from asserting the defense of erroneous classification.[17]

### Right to Counsel

The defendant also seeks an acquittal on the ground that he was denied the right to legal counsel before his local board. This contention is without merit, however, since proceedings before the local board are administrative and in no way adversary or criminal in nature. United States v. Chacon, 436 F.2d 411 (5th Cir.), cert. denied, 404 U.S. 874, 92 S.Ct. 161, 30 L.Ed.2d 118 (1971). In this respect, the court notes that the purpose of the informal meeting between a registrant and his local board, staffed by laymen who are uncompensated for their services, is to discuss the registrant's classification and to provide him with an opportunity to present further information. The court is not disposed to interject legal counsel at these meetings, thereby transforming them into adversary-type proceedings. See United States v. Wood, 454 F.2d 765, 768 (4th Cir. 1972). In any event, the court recognizes that other courts have uniformly held that a registrant is not entitled to an attorney at these local board meetings.[18]

### Order of Call

The defendant in addition contends that his order to report was invalid because it was issued in violation of the order of call regulations, 32 C.F.R. § 1631.7. The parties do not dispute that on the Delivery List (SSS Form 261) compiled by the defendant's local board for July, 1969, the defendant was the eighteenth registrant on the list out of a quota for that month of twenty-eight. In order to make a *prima facie* showing that the order of call regulations were violated, the defendant must establish that enough registrants existed who should have been inducted prior to the defendant but were not. More specifically, the defendant must show that eleven registrants were improperly bypassed by the local board. Since the defendant established a *prima facie* violation of these requirements at trial, the government must therefore show beyond a reasonable doubt that the local board's action was not "so lacking in support in

---

16. See Trial Minutes, Feb. 23, 1972; Government's Exhibit 2–I, p. 2.

17. The defendant contends that he should not be required to "re-exhaust" his administrative remedies. See United States v. Hayden, 445 F.2d 1365 (9th Cir. 1971); Glover v. United States, 286 F.2d 84 (5th Cir. 1961). However, in *Hayden*, the registrant justifiably relied upon a valid prior judicial confirmation of his religious beliefs, whereas in the present case the defendant could not draw any conference from the United States Attorney's refusal to prosecute. Cf. United States v. Simon, 448 F.2d 1272, 1273 (9th Cir. 1971). The court also notes that in contrast to the registrant in *Glover*, the defendant is a college graduate well-versed in selective service law and knowledgeable of his status at the time he refused to cooperate further with the Selective Service System.

18. See, e. g., United States v. Jones, 456 F.2d 627, 630 (3d Cir. 1972); United States v. Mendoza, 295 F.Supp. 673, 683 (E.D.N.Y.1969).

the record as to be arbitrary and capricious." United States v. Weintraub, 429 F.2d 658, 660 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971). Prior to trial, the defendant contended that fifty-four registrants should have been called before him. However, after trial, the defendant conceded that thirty-seven registrants were properly accounted for by the government. To preserve the confidentiality of their files in accordance with 32 C.F.R. §§ 1606.31, 1606.58(a), the remaining seventeen registrants are referred to by their order on the "worksheet" prepared by the government at trial. See Government's exhibit 5.

■ The court finds beyond a reasonable doubt that at least thirteen out of the seventeen registrants not called were unavailable. Six (Nos. 4, 9, 12, 13, 17 and 42) were awaiting either a personal appearance or an appeal and, under 32 C.F.R. §§ 1624.3, 1626.41, could not be ordered for induction; four registrants (Nos. 14, 20, 29 and 39) were under outstanding induction orders on June 10, 1969;[19] and three (Nos. 47, 49, and 52) had not undergone the required physical examinations and had not received a DD Form 62 Statement of Acceptability. In addition, the court finds that the local board's omission of the remaining four registrants from the delivery list "was not predicated upon egregious individual error or a pattern of plain error or discrimination."[20]

In summary, the court finds that the defendant is barred from asserting the defense of erroneous classification by failing to exhaust his administrative remedies; that he was not entitled to an attorney at his personal interview before the local board; and that he was called in proper order on the delivery list. In addition, the court finds that the government has established by credible evidence beyond a reasonable doubt that (1) the defendant was a person liable to be called for service in the armed forces of the United States; (2) the defendant received an order from his local board requiring him to report for induction, as charged in the indictment; and (3) the defendant unlawfully, willfully, and knowingly failed to submit to induction as ordered.

The court finds the defendant guilty of the offense charged in the indictment and the defendant's motion for a judgment of acquittal is therefore hereby denied.

The defendant is directed to appear on July 5, 1972 to fix a date for sentencing.

So ordered.

---

19. See United States v. Lane, 442 F.2d 415, 416 (9th Cir. 1971).

20. United States v. Griglio, 334 F.Supp. 1283, 1288 (D.Mass.1971). Registrant No. 3 was ordered to report as a transferee for induction in California on July 30, 1969. Since such a transfer takes anywhere from one month to three months' time, it is entirely possible that the registrant's induction order was issued prior to June 10, 1969. Registrant No. 6 was found acceptable on June 6, 1969 after consideration of his physical status. His file apparently was returned to the local board too late to be included on the defendant's delivery list. He subsequently was inducted into the armed forces on August 20, 1969. Registrant No. 10 was classified 1–A on November 6, 1968. According to the 102 book, he was rejected by the armed forces on June 17, 1969 (a notation mark "A Rej." appears next to his name on that date). Although his file is destroyed, the court may infer from this that he was ordered to report before June 10, 1969, reported, and was rejected. On September 10, 1969, he was reclassified I–Y. Registrant No. 26 was classified 1–A by the appeal board on March 27, 1969. On April 29, 1969, he requested an SSS Form 150. On April 30, 1969, the local board also received information that he was entering upon divinity studies. On October 15, 1969, he was reclassified 4–D (Divinity Student deferment). Although consideration by the local board of this classification covered an extensive period of time, this court will not second-guess any such delay by the board or state that such action was arbitrary or capricious.