**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Anthony MACIEL, Defendant-Appellant.**

**No. 72–2403.**

United States Court of Appeals, Ninth Circuit.

Nov. 14, 1972.

Rehearing Denied Dec. 15, 1972.

Michael Kennedy (argued), Kennedy & Rhine, San Francisco, Cal., for defendant-appellant.

Robert E. Carey, Jr., Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Maciel appeals his conviction for refusing to submit to induction. 50 U.S.C. App. § 462(a).

Maciel registered with his local board in Reno, Nevada, in 1967, and the board classified him I–A in December, 1968. The Armed Forces Entrance Examining Station (AFEES) examined Maciel on April 8, 1969, and gave him special hearing tests in September, 1969. AFEES found Maciel physically fit for induction.

On October 10, 1969, Maciel's physician sent President Nixon two letters saying that Maciel had hearing problems and was under medication. The physician recommended that Maciel be excused from the draft because loud noises might deafen him. These letters were forwarded to the State Director of Ne-

---

* Honorable Gus J. Solomon, Senior United States District Judge, District of Oregon, sitting by designation.

vada and, on October 30, 1969, to the local board. The State Director wrote the physician and the local board that Maciel's claims had already been reviewed and, in any event, AFEES would reexamine Maciel if the board decided to induct him.

In November, 1969, Maciel applied for a conscientious objector (I–O) deferment. After a personal interview, the board voted to retain him in class I–A. The board notified Maciel of his right to appeal this decision, but he chose not to appeal.

In January, 1970, Maciel became interested in the Holy Order of Mans (the Order), which is a religious organization incorporated in California in 1968 as a non-profit, religious corporation. On February 16, 1970, Maciel took the Order's "first vows", which included a vow of total obedience to the superiors of the Order. Maciel asserts that he did not appeal the board's decision on his I–O claim because his superiors told him not to appeal.

On March 21, 1970, the board mailed Maciel an order to report for induction on April 20. On April 21, Maciel took another AFEES physical, but his induction was postponed while AFEES processed a moral waiver because of Maciel's criminal record. On June 4, AFEES found Maciel morally and physically qualified for induction.

The board rescheduled Maciel's induction for July 21, 1970. On July 13, Maciel requested a ministerial (IV–D) deferment because he was preparing to become a priest in the Order. The board postponed Maciel's induction until the August call to investigate his claim. Later, the State Director extended the postponement to the September call.

On August 13, 1970, the State Director sent the local board a letter in which he expressed his opinion that members of the Order could not receive IV–D deferments, but he directed the board to make the final decision itself. After a courtesy interview on August 25, 1970, the board refused to reopen Maciel's case

and ordered him to report for induction on September 22, 1970. On September 22, the board granted Maciel's request for a transfer of induction from Reno, Nevada, to San Francisco, California. On October 26, 1970, the local board in San Francisco ordered Maciel to report for induction on November 18. Maciel took lifetime vows and became a full Brother in the Order on November 1, 1970. He reported to the Armed Forces Induction Center on November 18, but he refused to submit to induction.

■ First, Maciel contends that his I–A classification was wrong because neither the board nor AFEES properly evaluated his hearing problems. He asserts that no one reviewed the letters of October 10, 1969, from his physician.

Before the board received the letters, the government gave Maciel a pre-induction physical and special audiometric tests. When Maciel took these tests, he had already presented one letter from the same physician saying that Maciel had imperfect hearing, that he suffered from tinnitus, and that loud noises would further impair his hearing. AFEES considered this letter before it found Maciel physically fit.

The October 10 letters added little, if any, new information about appellant's hearing, and we do not agree that either AFEES or the board did not consider these letters. In addition to the presumption that everything raised by Maciel was considered, Skinner v. United States, 215 F.2d 767 (9th Cir. 1954), cert. denied, 348 U.S. 981, 75 S.Ct. 572, 99 L.Ed. 763 (1955), the medical form for Maciel's April 21, 1970, physical contains a notation of his microcirculatory problem.

■ Maciel next attacks the board's denial of his I–O claim. The trial court ruled that Maciel could not raise this defense because he failed to exhaust his administrative remedies by failing to appeal the board's decision. Lockhart v. United States, 420 F.2d 1143 (9th Cir. 1969) (en banc). We agree.

Maciel contends that the exhaustion rule should not apply to him because his religious convictions prevented him from appealing. He asserts that he "totally subjugated his will to that of the Order . . . ," and that his superiors told him not to appeal. The First Amendment does not protect Maciel's secular conduct even though he acted in response to the command of the Order.

Appellant relies on cases like Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), but neither is in point. *Sherbert* held that a state could not take unemployment compensation away from a person because he refused to work on his Sabbath. *Yoder* held that a state could not compel Amish children to attend regular schools because this would destroy the Amish religion and way of life. Maciel's conduct has no such relation to religious values.

Maciel next contends that the board mishandled his IV–D claim. First, he alleges that the board erred when it refused to reopen his case to reconsider the claim. And, second, he alleges that the board in fact did reopen his case and that he was entitled to an administrative appeal on the basis of United States v. Miller, 455 F.2d 358 (9th Cir. 1972).

For either argument to succeed, Maciel must show that he was entitled to a reopening. Otherwise there was no prejudice.

Maciel's request for a IV–D deferment came after the board mailed him an order to report for induction. The board had no authority to reopen Maciel's case because there was no "change in [his] status resulting from circumstances over which [he] had no control." 32 C.F.R. § 1625.2. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), held that a conscientious objector claim which arose after an induction order was not beyond a registrant's control. Maciel's decision to become a minister was equally within his control.

Maciel next contends that the trial court erred when it did not allow him to introduce evidence that his religious convictions prevented him from appealing the board's decision on his I–O claim. There is no merit in this contention.

Finally, Maciel challenges the jury instruction on the meaning of "willfulness." The trial court properly denied Maciel's request to include in the instruction a phrase like "evil motive" or "bad faith." United States v. Couming, 445 F.2d 555 (1st Cir. 1971), cert. denied, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971).

Affirmed.