**UNITED STATES of America,
Appellee,**

v.

**Leland Laird HOLBY, Appellant.**

**No. 643, Docket 72–2120.**

United States Court of Appeals,
Second Circuit.

Argued March 2, 1973.

Decided April 18, 1973.

---

Marvin M. Karpatkin, New York City (Barry Satlow, New York Civil Liberties Union, New York City, of counsel), for appellant.

George E. Wilson, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. S. D. N. Y., Peter L. Truebner, Asst. U. S. Atty., of counsel), for appellee.

Robert H. Turtle and Edmund D. Campbell, Washington, D. C., McNeill Smith, Greensboro, N. C., and James M. Nabrit, III, New York City, for American Bar Association, amicus curiae.

Before KAUFMAN and MANSFIELD, Circuit Judges, and BRYAN, District Judge.*

FREDERICK van PELT BRYAN, District Judge:

Leland Laird Holby appeals from a judgment of conviction for knowing, wilful and unlawful refusal to submit to induction in the armed forces of the United States, in violation of 50 U.S.C. App. § 462(a). The judgment was entered in the Southern District of New York, after trial to the Court without a jury.

The District Court found that Holby had knowingly failed to exhaust his administrative remedies under the Military Selective Service Act. It held that he was, therefore, barred from asserting his defenses on the merits that the order of induction was invalid because there was no basis in fact for denial of 1–O classification as a conscientious objector and because no reasons have been given for such denial. The District Court thus did not consider or pass on these defenses. It further held that defendant had no right to legal counsel before his local board and that his induction order was not issued in violation of the order of call regulations. Holby was found guilty as charged. 345 F.Supp. 639 (S. D.N.Y.1972).[1]

The facts are not in dispute.

Holby registered with the Selective Service on October 11, 1963. He attended Middlebury College and was classified 2–S (full time undergraduate student deferment). In June, 1967, upon his graduation from college, he filed Selective Service Form 150, the special form for conscientious objectors, with extensive supporting material. He presented a strong case for 1–O classification as a conscientious objector. On July 19, 1967, the local board rejected his conscientious objector application and classified him 1–A. The board gave no reasons for its decision.

Thereafter, at Holby's request, he was granted a personal appearance and he and his parish clergyman appeared, separately, before the local board. Following these interviews, the local board, on September 13, 1967, again refused to classify him as a conscientious objector and continued his 1–A classification. Again, no reasons were given. In the meantime, Holby had appeared for physical examination and was found physically fit for induction.

Holby appealed from the decision of his local board and on November 9,1967,

---

* Of the United States District Court for the Southern District of New York sitting by designation.

1. Pursuant to 18 U.S.C. § 3651, Judge Cannella sentenced Holby to imprisonment for two years but suspended all but four months of the sentence. He also imposed an eighteen month term of probation upon Holby to follow his confinement.

by a vote of 2 to 1, the New York State Appeal Board upheld the 1–A classification. It gave no reasons. Thereafter, on appeal to the Presidential Appeal Board, that Board also upheld his 1–A classification without stating any reasons.

On April 15, 1968, pursuant to an order to report for induction, Holby appeared at the induction center but refused to submit to induction on the ground of his religious objection to participation in war in any form. The case was then sent to the United States Attorney for the Southern District of New York for prosecution. The United States Attorney declined to prosecute Holby, advising Selective Service System afficials (1) that on the record, there appeared to be no basis in fact for the denial of his 1–O claim and (2) that no reasons had been given for the denial of 1–O classification. A request from the Selective Service System urging reconsideration was denied by the United States Attorney for the same reasons given for the initial refusal to prosecute.

The New York State Selective Service headquarters then advised Holby's local board that prosecution had been declined and directed the board to call Holby for a "discretionary" or "courtesy" interview. When Holby received that call, he requested permission to attend with his counsel and a stenographer or tape recorder so that he could obtain an accurate transcript of the proceedings. The local board refused his request under Selective Service Regulation 32 C.F.R. § 1624.1(b) providing that "no registrant may be represented before the local board by anyone acting as attorney or legal counsel."

Holby then wrote to the board declining to appear because there was nothing he could add to the record and because of its refusal to permit him to appear with counsel and to record the proceed-

ings when he was under threat of criminal prosecution for his prior refusal to submit to induction. On November 13, 1968 the board refused to reopen his 1–A classification, without stating any reasons.

On November 27, 1968 the State Director directed the local board to reopen and reconsider. In March, 1969 the local board again requested Holby to appear for a "discretionary" interview. Holby again declined, on the same grounds. On May 6, 1969 he was advised that he was still classified 1–A. No reasons were given. He was sent the standard form, SSS Form 217, advising him of his right to a personal appearance and to an appeal. Holby did not exercise those rights. He was directed to report for induction on July 9, 1969. He appeared at the induction center but again refused induction on the religious grounds previously asserted. His prosecution and conviction for refusal to submit to induction followed.

Holby attacks the judgment of conviction on several grounds. First, he contends that the court below was in error in holding that the exhaustion of administrative remedies doctrine barred him from asserting his defenses on the merits. Second, he urges that the induction order was invalid because (1) there was no basis in fact for the denial of his application for 1–O classification as a conscientious objector, and (2) because neither the local board nor the appeals boards gave any reason or explanation for their classification decisions.[2]

I·

■ The question of when the doctrine of exhaustion of administrative remedies should be applied in criminal cases under the Selective Service Act to bar defenses on the merits is not without difficulty. However, the basic principles have been well established in

2. Holby also contends that the Selective Service Regulation, 32 C.F.R. § 1624.1 (b), denying him counsel before the local board violates his constitutional rights

under the Fifth and Sixth Amendments and was not authorized by Congress. In view of our disposition of the other issues, we do not pass on those questions here.

McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), where the exhaustion doctrine was held not applicable under the circumstances of that case. As the Court stated in *McKart*,

> [I]t is well to remember that use of the exhaustion doctrine in criminal cases can be exceedingly harsh. The defendant is often stripped of his only defense; he must go to jail without having any judicial review of an assertedly invalid order. This deprivation of judicial review occurs not when the affected person is affirmatively asking for assistance from the courts but when the Government is attempting to impose criminal sanctions on him. Such a result should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon the registrant if he is denied judicial review. . . . We must ask, then, whether there is in this case a governmental interest compelling enough to outweigh the severe burden placed on petitioner. Even if there is no such compelling interest when petitioner's case is viewed in isolation, we must also ask whether allowing all similarly situated registrants to bypass administrative appeal procedures would seriously impair the Selective Service System's ability to perform its functions. 395 U.S. at 197, 89 S.Ct. at 1664 (footnote omitted).

■ "[D]iscrete analysis of the particular default"[3] ascribed to Holby in the case at bar convinces us that the application of exhaustion doctrine here would be exceedingly harsh and that there is no governmental interest compelling enough to justify its application. Moreover, under the circumstances of this case, there is no danger that allowing similarly situated registrants to bypass administrative procedures would seriously impair the ability of the Selective Service System to perform its functions.

During the extensive proceedings culminating in Holby's first refusal to submit to induction on religious grounds, he meticulously complied with the Selective Service rules and regulations and diligently pursued every administrative remedy available to him. He submitted a full and convincing application for 1–O classification as a conscientious objector, with extensive supporting material including seven letters attesting to his sincerity. He took the required physical examination. When the local board denied his application he applied for and made a personal appearance with his parish clergyman, who testified before the board as to his sincerity.

When his application was again denied, Holby successively appealed to the State Appeal Board and, finally, to the Presidential Appeal Board, both of which upheld the local board's determination. At no point did any of the administrative bodies give any reasons for denial of his application for 1–O classification and no such reasons appeared from the record. Thus, at this point, he had fully exhausted all his administrative remedies and had been denied any relief.

When the Selective Service forwarded Holby's case for prosecution, the United States Attorney, with ample justification, twice declined to prosecute.

Thereafter, the local board invited Holby to appear for so-called "courtesy" or "discretionary" interviews. Holby did not ignore those invitations. He requested the board's permission to appear with counsel and a stenographer or tape recorder, in view of the already demonstrated threat of criminal prosecution. When the board refused his request, Holby declined to appear on the ground that the record before the board was complete and there was nothing he could add to that record, and on the further ground of the board's refusal to permit him to appear with counsel and to record the proceedings.

---

3. McGee v. United States, 402 U.S. 479, 485, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971).

When the local board again adhered to the 1–A classification, Holby did not appeal from that determination. As he explained at the trial, he felt he had presented everything he could in support of his 1–O application and that after the sixth successive denial, any further appeal would be futile.[4]

The Government takes the position that Holby's failure to appear for a "courtesy" or "discretionary" interview or to appeal from the board's sixth denial of his claim for 1–O classification— that is to say, to re-exhaust the remedies he had already fully pursued—bars him, under the exhaustion doctrine, from asserting his defenses on the merits. We disagree.

When Holby was invited to appear for the courtesy interviews, he had already gone through the entire gamut of administrative remedies with inexplicable lack of success. He had provided the board with thorough documentation of his 1–O claim and had personally appeared before the board. It is difficult to see what could have been added to that record.

All that remained for Holby to do when the board adhered to the 1–A classification was to file a simple statement saying "I appeal". That would have added nothing on the merits to the already complete administrative record.

Under the circumstances here, Holby's failure to appear at the discretionary interviews and to appeal does not constitute a waiver of his right to contest his classification or furnish a basis for denying him the right to do so. We cannot perceive "a governmental interest compelling enough to outweigh the severe burden" which would be placed on the defendant by the application of the exhaustion doctrine here.

Moreover, the result we reach, if applied to similarly situated registrants, could not seriously impair the functioning of the Selective Service System. The number of registrants similarly situated will be miniscule.

Holby was fully entitled to a 1–O classification on the record he had already made before the board.[5] Given the failure of the system to have performed its function properly the first four times it had the chance to do so, the claim that denying it a fifth opportunity constitutes a serious impairment falls of its own weight. "Surely an insubstantial procedural default by a registrant should not shield an invalid order from judicial correction, simply because the interest in time-saving self-correction by the agency is involved." McGee v. United States, 402 U.S. 479, 484–485, 91 S. Ct. 1565, 1569, 29 L.Ed.2d 47 (1971).

Whether the exhaustion doctrine should be applied in a particular case depends on the facts. The facts here fall generally within the ambit of such cases as United States v. Rabe, 466 F.2d 783 (7th Cir. 1972); United States v. Hayden, 445 F.2d 1365, on petition for rehearing, id. at 1378 (9th Cir. 1971); and United States v. Glover, 286 F.2d 84 (8th Cir. 1961), in each of which the court refused to apply the exhaustion doctrine as a bar.

The facts in this case are quite different from those in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), on which the Government principally relies. McGee neither sought a personal appearance nor took an administrative appeal after his local board denied his application for classification as a conscientious objector. He had burned his draft card, announced unequivocally that he would adhere to a policy of non-cooperation with the Selective Service System and consistently did so. There was a deliberate flouting of the administrative process. The Supreme Court, applying the principles an-

---

4. We see no basis in the record for the finding by the Court below that this was a "studied and obstructionist effort on his [Holby's] part to prevent the Selective Service System from performing its fact-finding function." 345 F.Supp. at 642.

5. See part II, infra.

nounced in *McKart*, held that McGee's rejection of all administrative remedies prevented the Selective Service System from having a "full opportunity", 402 U.S. at 489, 91 S.Ct. 1565, to compile a factual record and to have administrative review of the classification. Accordingly, the court applied the exhaustion doctrine to bar McGee from asserting the defense that there was no basis in fact for denial of his request for 1–O classification.

Holby, in contrast, had provided Selective Service with a full and detailed record, and had availed himself of administrative review at the highest level.

This case is also unlike United States v. Alford, 471 F.2d 718 (9th Cir. 1972) and United States v. Maciel, 469 F.2d 718 (9th Cir. 1972), cited by the Government, since, among other factual distinctions, those cases did not involve registrants who had previously fully exhausted their administrative remedies. United States v. Nelson, 6 SSLR 3034, No. 72–2383 (9th Cir. Dec. 21, 1972), also relied upon by the Government, is apparently the only case holding a registrant barred by the exhaustion doctrine for failure to conduct a second appeal on an identical claim. In that case there had been a change in the applicable law between the registrant's initial exhaustion and subsequent failure to re-exhaust, and there was no intervening refusal to submit to induction. To the extent that *Nelson* is inconsistent with the views we express here (*but see* United States v. Goss, No. CR 71–1473, 6 SSLR 3152 (N.D.Cal. March 2, 1973), we decline to follow it.*

Applying the principles announced in *McKart* and *McGee* to the circumstances of this case, we hold there is nothing which would justify the forfeiture of judicial review of Holby's defenses on the merits because he failed to reexhaust administrative remedies which he had already fully pursued without success.

We turn, then, to Holby's defenses.

## II

The first defense is that the order of induction was invalid because there was no basis in fact for the local board's rejection of Holby's claim for 1–O classification.

■ Congress did not choose to subject administrative action under the Selective Service Act to the customary scope of review authorized by other administrative agency statutes. Judicial review of classifications made by a local board is narrowly circumscribed and confined to a determination of whether there is any basis in fact for the classification which the local board gave the registrant. If there is no basis in fact for the classification, the classification and resulting induction order are invalid. 50 U.S.C. App. § 460(b)(3); United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

■■ Whether or not there is such a basis in fact is a question to be decided by the reviewing court on the administrative record before the board. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States ex rel. Zelman v. Carpenter, 457 F.2d 621, 622 (2d Cir. 1972); Helwick v. Laird, 438 F.2d 959, 965–966 (5th Cir. 1971). In conscientious objector cases the basis in fact test involves not only the consideration of the objective facts concerning the registrant's claimed beliefs but also the subjective question of his sincerity in such beliefs. *See* Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ Holby's application (SSS Form 150) spelled out fully and at length his

---

* After our opinion was filed, we learned that on petition for rehearing this United States v. Nelson opinion was withdrawn and a new opinion substituted reversing instead of confirming Nelson's conviction. United States v. Nelson, 476 F.2d 254 (9th Cir. 1973).

position as a religious pacifist in accordance with well recognized Christian principles and established all the criteria necessary for 1–O classification. The application recited that Holby had had extensive religious training, was a devout and practicing member of the Episcopal Church, and that his rejection of war in any form was based on the Nicene Creed and the doctrine of brotherly love as taught by Christ. He made a full and convincing statement of the rationale of his beliefs. With his application he submitted pamphlets elaborating on his principles and beliefs. He also submitted seven letters from clergymen, relatives and friends conversant with his religious convictions, which attested to his sincerity. Holby's claim had none of the typical flaws, such as opposition to only some wars, *see* Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L. Ed.2d 168 (1971), untimeliness of his application, *see* Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), or lack of sincerity, *see* Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). His claim is simple, direct and free from doubt.

Nothing in the record of his personal appearance before the local board after its initial rejection of his claim casts the slightest doubt on any of the facts stated in his application or the sincerity of his beliefs. In fact, his parish clergyman, who appeared before the board at the same time, attested to Holby's sincerity. Holby's own summary of the appearance before the local board, which the Government does not question, confirms this.

The board gave no reasons for any of its successive rejections of his claim and none appear from the record.

The only perhaps unusual feature of Holby's application is his forthright admission, included in his Form 150, that he had been a member of the Reserve Officers Training Corps during his freshman and sophomore years at Mid-dlebury College two years before he made his application for conscientious objector classification. Holby pointed out, however, that at that time he had not yet "chosen to declare myself officially a pacifist"; that the R.O.T.C. program was compulsory for the first two years of college only and was required for graduation; that he had sought to be released from the program but that releases were not permitted by the college administration; that he did not continue with R.O.T.C. after the end of his sophomore year; and that he was among the leaders of a group of students who were successful in persuading the trustees of the college to make R.O. T.C. voluntary instead of compulsory. If the board considered this information as an indication of lack of sincerity on Holby's part (and there is some indication that it may have), we see no basis in fact for such a conclusion.

We hold that, on the record before the board, there was no basis in fact for the local board's denial of Holby's 1–O application, that therefore the order of induction was invalid and that his conviction must fall for that reason.

### III

There is another reason why the conviction cannot be allowed to stand.

■ At the least, Holby's made out a prima facie case before the board for 1–O classification, as the Government concedes. On none of the four occasions on which the local board refused Holby's request for 1–O classification did the board give any reasons whatsoever for so doing.

Prior to the confession of error by the Solicitor General, in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972), on the basis of which the judgment of conviction was vacated and the cause remanded, there was some doubt in this circuit as to whether, before the 1971 amendment to the Selective Service Act,[6] it was neces-

---

6. Public Law 92–129, 85 Stat. 353, September 28, 1971, provides that in the

event of a decision adverse to the claim of a registrant, the local or appeal board

sary for the local board to give a statement of reasons for denial of an application for reclassification. *See* United States ex rel. Checkman v. Laird, 469 F.2d 773 (2d Cir. 1972); United States ex rel. Zelman v. Carpenter, 457 F.2d 621, 622 n. 1 (2d Cir. March 27, 1972, decided on the same day as *Joseph, supra*); United States v. Lenhard, 437 F. 2d 936 (2d Cir. 1970); Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). *But cf., e. g.,* United States v. Haughton, 413 F. 2d 736 (9th Cir. 1969); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970); United States v. Stetter, 445 F.2d 472 (5th Cir. 1971).

That doubt has now been resolved.

In confessing error in *Joseph,* the Solicitor General, after citing with approval a series of cases which held that a statement of reasons was required, stated

> The underlying rationale of these decisions, although variously formulated, is that some statements of reasons for a board's classification is necessary to "meaningful" review (cf. Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 99 L.Ed. 467) of the administrative determination—both by the State Appeals Boards and by the courts. . . .

He conceded that failure to give a statement of reasons invalidated the classification.

A statement to the same effect was also made by the Solicitor General in Lenhard v. United States, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972), vacating and remanding 455 F.2d 1406 (2d Cir. 1971) on the basis of the confession of error.[7] In *Lenhard,* the conviction was reversed by the Court of Appeals for this circuit on remand. 461 F.2d 1268 (2d Cir. 1972).

Since *Joseph* and *Lenhard,* it is plain that, in selective service cases, the failure of the local board to state reasons for denial of conscientious objector classification where a prima facie case has been made out deprives a registrant of any meaningful review of the administrative determination. *See* United States v. Rabe, 466 F.2d 783 (7th Cir. 1972); United States v. Orr, 474 F.2d 1365, 1369 & n. 3 (2d Cir. 1973). Such arbitrary action by the local board in this case invalidates the 1–A classification on which the order of induction was based and the conviction must fall for that reason also.

The judgment of conviction is reversed and the cause is remanded with directions to dismiss the indictment.

---

making such decision "shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision." 50 U.S.C.App. § 471a(b)(4).

7. See also Fein v. Selective Service System, 405 U.S. 365, 377–381, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).